Roy S. RAMSEY and Perna Mae Ramsey,
Plaintiffs in Error,

v.

J. B. FOWLER and Bertha Lee Fowler,
Defendants in Error.

No. 37112.

Supreme Court of Oklahoma.

March 19, 1957.

Byrne A. Bowman, Oklahoma City, for
plaintiffs in error.

Satterfield, Franklin & Harmon, Okla-
homa City, for defendants in error.

DAVISON, Justice.

This is a suit to rescind a contract of sale of a transfer and storage business and to recover the down payment, brought by the vendees, Roy S. Ramsey and Perna Mae Ramsey, as plaintiffs, against the vendors, J. B. Fowler, and Bertha Lee Fowler, as defendants. The parties will be referred to as they appeared in the trial court.

The defendants, an elderly couple each of whom was in bad health, were the owners and operators of the Hurry Up Transfer Co. in Oklahoma City and had been such for some thirty five years. Because of their age and health, the defendants had placed their property in the hands of a broker for sale. In the latter part of September 1954, the plaintiffs, having noticed the sale advertisement, contacted the broker relative to purchasing the property. On Saturday, October 2, the broker took them to defendants' place of business for the purpose of making an inspection. They spent some hour and a half looking at the different parts of the business but, because none of the employees was there to start up the trucks, they decided to come by on the following morning to inspect them. This they did. However, they were decidedly disappointed with their condition. On Monday, October 4th, the plaintiffs were furnished a list of all the equipment included in the contemplated transaction. The price that had been asked for the property was $8,500. On Sunday, after looking at the trucks, the plaintiffs set the price they would pay at $7,500 being $2,500 in cash and the balance at $50 per month. In the Monday conversation the broker informed plaintiffs that defendants had agreed to accept the $7,500 as offered but with the deferred payments at $100 per month. On Tuesday, the broker informed the plaintiffs that the defendants had a truckload of property for conveyance to Eagle Pass, Texas, for about a $300 fee and, that, if the deal was closed, that piece of business would be given to plaintiffs. That evening, Tuesday, October 5, plaintiffs did sign a contract to purchase the business and made a small payment as earnest money.

On the next day, about noon October 6, the transaction was closed. Plaintiffs paid $2,500 in cash and were given a bill of sale. They then executed a note and mortgage for the balance of the purchase price. On October 28, 1954, before the first monthly payment was due, this suit was filed whereby plaintiffs seek to rescind the contract, on the grounds of fraud, and to have a return of the $2,500 cash payment. It is alleged in the petition as amended that the fraud consisted of a representation by the defendants and their agent, the broker, that the business had a gross monthly income of $1,000 to 1,200 when, in truth and in fact, such gross income was less than $500; that defendants' motor carrier permit had been cancelled; that there was a judgment of $176.84 for unpaid insurance premium against defendants and that an application for a receiver was pending; and that the records concerning property in storage were incomplete and incorrect.

It is not alleged nor was any proof offered to show that any of the alleged wrongs had, in any way, affected the plaintiffs in their possession or operation of the business. In addition, the record does not contain evidence supporting the allegations, as to the acts of fraud on the part of defendants. Rather, the evidence does establish that, for the month of October 1954 and each of the four preceeding months, the gross income from the business had been in excess of $1,000 monthly; that the order cancelling the motor carrier permit was erroneous and was later vacated; that the judgment described had been satisfied in full before the sale of the business; that the condition of the records had not caused plaintiffs any loss.

The trial court rendered judgment for defendants and plaintiffs have appealed.

■ The essentials of actionable fraud are well established in this jurisdiction. One of the cases wherein they were enumerated was Cooper v. Gibson, 69 Okl. 105, 170 P. 220, which was quoted in the more recent case of Tyler v. Hartford Acc. & Indem. Co., 195 Okl. 523, 159 P.2d 722, 725, as follows:

" 'To constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that he made it when he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury, and (7) that all these facts must be proven with a reasonable degree of certainty, and all of them must be found to exist, the absence of any of them would be fatal to a recovery.' "

In the case at bar, none of these essentials was established by that degree of proof which the law requires. A solemn written contract was executed by the parties. The business was transferred and the plaintiffs were put in possession at a purchase price offered by them, payable at the times and in the manner satisfactory to them. In the case of Brown v. Harmon, 115 Okl. 277, 242 P. 1047, we discussed the degree of proof required to establish a cause of action of this nature. Other opinions were therein cited to the effect that,

"Canceling an executed contract is an exercise of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved." Atlantic Delaine Co. v. James, 94 U.S. 207, 24 L.Ed 112.

"We take the general doctrine to be, that when, in a court of equity it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt."

United States v. Maxwell Land-Grant Co., 121 U.S. 325–331, 7 S.Ct. 1015, 1029, 30 L.Ed. 949–959.

"A mere preponderance of evidence which at the same time is vague and ambiguous is not sufficient to warrant a finding of fraud, and will not sustain a judgment based upon such finding." Adams v. Porter, 58 Okl. 225, 158 P. 899, 900.

"In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel the opposing presumptions. It should be of such weight and exigency as to satisfactorily establish the wrongful conduct charged; honesty and fair dealing as a rule being presumed." Moore v. Adams, 26 Okl. 48, 108 P. 392.

Nothing in the record herein is of sufficient evidentiary weight to meet those requirements. A very recent case before this court dealing with practically the same type of situation is that of McDaniel v. Quinn, 307 P.2d 127 wherein the trial court's judgment rescinding the. contract was reversed. We find nothing herein indicating that a different conclusion should be reached.

■ Plaintiffs also complain of the trial court's action in permitting one of the defendants to testify with reference to the reinstatement of the permit and to the satisfaction of the judgment. As discussed above, the burden was upon plaintiffs to prove injury resulting from the alleged acts of fraud. The testimony was properly admitted to counter such evidence as was produced by plaintiffs in an attempt to discharge that burden, and was competent.

■ The trial court's rejection of proffered evidence, which plaintiffs assert to be erroneous, can be designated in three categories according to the evidence itself. The first was evidence as to the earnings of the business since the filing of the in-

stant suit. The second involved evidence as to the inaccuracy of the books and records and the unreliable method by which the Fowlers kept them. The third category consisted of allegations in the various motions for new trial which defendants denominated newly discovered evidence and which consisted chiefly of inaccurate or unfounded entries of purported customers in the Fowler's records. Whether true or false, these records were not seen or relied on by the Ramseys when dealing for the business. An extended discussion is unnecessary in disposing of these contentions. Clearly none of the evidence tended to prove or disprove any of the necessary elements of actionable fraud as itemized above. However, had the rulings of the trial court been definitely erroneous they would have constituted harmless errors because plaintiffs have utterly failed to show that they suffered damage or injury of any kind.

The judgment was, therefore, correct and should be and the same is hereby affirmed.

WELCH, C. J., and HALLEY, JOHN-SON, WILLIAMS, BLACKBIRD, JACK-SON and CARLILE, JJ., concur.