**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a corporation, Plaintiff in Error,**

v.

**AMERICAN AIRLINES, INC., a corporation, Defendant in Error.**

No. 40340.

Supreme Court of Oklahoma.

Dec. 7, 1965.

John A. Johnson, of Savage, Gibson, Benefield & Shelton, Oklahoma City, for plaintiff in error.

Foliart, Shepherd & McPherren, Russell F. Thompson, Oklahoma City, William A. Vassar, Chandler, for defendant in error.

Howard K. Berry, Sr., John H. Cantrell, Paul C. Duncan, Calvin W. Hendrickson, William A. Kerr, Baker H. Melone, Rinehart & Morrison, and Jack Ewing Wilson, Oklahoma City, Robert W. Blackstock, Bristow, C. Lawrence Elder, Tulsa, Tom Hieronymus, Woodward, A. H. Meacham, Clinton, Richardson, Cavanagh & Johnson, Lawton, Rinehart, Rinehart & Rinehart, El Reno, Hugh M. Sandlin, Holdenville, amici curiæ.

WILLIAMS, Justice.

The respective parties to this appeal are herein called plaintiff and defendant as they appeared in the trial court.

Plaintiff, American Airlines, Inc., sued defendant, Chicago, Rock Island & Pacific Railroad Company, for damages for the destruction of two jet aircraft engines and for loss of their use until they could be replaced. The engines were being transported by means of a truck-trailer owned and operated by Transcon Lines, Inc., who is not a party to this action. Plaintiff alleged that defendant's train was negligently caused to collide with the truck-trailer at a point where defendant's railroad tracks cross U. S. Highway 66 in the town of Yukon, Oklahoma; that the value of the jet engines before the collision was $342,763.00 and that their salvage value afterwards was $418.37, and that defendant was therefore liable to plaintiff in the sum of $342,344.63. As a separate cause of action plaintiff sought special damages in the nature of the value of the use of the destroyed engines allegedly lost during the period required for replacement thereof in the amount of $66,939.60. A verdict was returned for $23,000.00 for loss of use of the engines and for $246,561.-35 for their value. Defendant's motion for new trial was overruled and this appeal followed.

We are impressed that defendant's second proposition of effect that the closing argument of plaintiff's attorney prevented defendant from having a fair trial is well taken and that, therefore, the judgment must be reversed and the cause remanded for a new trial.

We shall not discuss defendant's first proposition of error, concerning the part of the verdict and judgment that allowed $23,000.00 damages for loss of use of the engines, which is that the maximum of damages recoverable where personal property is damaged beyond repair is its reasonable value at the time of the loss, less salvage, further than to say that a careful examination of the record and briefs and our own research inclines us to the belief that we would have affirmed the judgment but for the error concerned in defendant's second proposition. See Robbins v. Trotter, 203 Okl. 68, 217 P.2d 1027.

It is not necessary to detail the evidence presented but some discussion of it is necessary to an understanding of our holding herein. This action is by one corporation against another. The defense is based on a denial of any negligence which amounted to being the proximate cause of the collision and damages. Defendant specifically alleged that the acts of a third party, the driver of the Transcon truck-trailer, were the proximate cause of the collision. Although plaintiff's evidence, if believed by the jury, was sufficient to support a verdict in its favor, there was also evidence presented by defendant which, if believed by the jury, was sufficient to support a verdict for defendant. Defendant's witnesses did not deny that the train was exceeding the maximum speed limit prescribed by a Yukon ordinance, but they presented evidence to the effect that for approximately a half-minute before the train reached the crossing the train whistle sounded, a warning bell at the crossing rang, and flashing red warning lights shone out toward the roadway along which the truck-trailer approached the crossing.

With this brief statement of the evidence as a background, we now turn to a consideration of plaintiff's closing argument. Defendant does not complain about one or a few isolated words or sentences. Complaint is made concerning the entire closing argument; that the argument as built and put together by counsel deprived defendant of a fair and impartial jury, that plaintiff submerged its corporate identity in the minds of the jurors by appealing to their self-interests and asking them to put themselves in the position of the plaintiff. The following are excerpts from the argument:

"* * * any one of you who might not have a jet engine, but have your own life and your own property, might be confronted with the same situation that we're confronted with in this case. Now, let me tell you, if you are ever unfortunate enough, and I hope with all my heart that you never are, to ever get run down by a train and you have you or your dear ones or your property wiped out * * * when one of these trains runs over you * * * if any one of you ladies and any one of you gentlemen on this jury—if you ship your cow, your household goods, your sewing machine * * * you would want them to pay the bill to you, if you or your property or your dear ones got run down at one of these crossings * * * I hope you don't ever get run over, because if you ever have to fight it, it's hard to do—but if you ever get run over I'll guarantee you that the railroad will bring in signal experts,— they'll bring in high-powered experts with all the equipment to prove to the jury that it just couldn't happen. Now, that's going to give you a real nice feeling when you actually see the signal lights fail and if you are ever fortunate enough to live through it and you come into court and tell somebody about it. * * * Analyze how you would feel if this had been your own property or members of your family, your loved ones in that accident."

Most courts which have had occasion to pass on such argument as this, where counsel asks the jurors to place themselves in the position of a litigant, hold that it is improper and constitutes reversible error. See Annotation, 70 A.L.R.2d 935.

We determine that other parts of the argument, when taken together with the above, combined to cause the jurors to be prejudiced against defendant. The argument is viewed as tending to submerge the issues to be decided as may be seen from the following excerpts:

"* * * This is an important case —it's more important than two jet engines. * * * Now, you don't have to decide this case on the issue of the signal lights."

It tended to submerge the corporate identity of the plaintiff, asked the jurors to place themselves in the position of plaintiff, and warned them away from deciding the

case on the factual issues. It exhorted the jury to punish the defendant for breaking the speed ordinance of the City of Yukon, as follows:

"  *  *  *  I wanted Mr. Bateman to be here, the investigating officer, and the Chief of Police, he is sitting out there, also. These people have an interest in this lawsuit and I think that it is proper that they be here, and the reason I am here is these two jet engines. They know, these people from Yukon, Oklahoma, they know about those signal lights, and I think you probably know that they know, and I'll tell you what they'd like—they'd like for something to happen to slow down those trains on that Rock Island Railroad before they kill some of their population out there. They'd like for them to slow down to 15 miles per hour, like they're supposed to do—that's what they'd like, and I'll tell you if you bring in the right kind of a verdict in this case I bet they slow down—I'll bet they slow down. The railroad has no heart, it's got no soul, it's a corporate interest, but I'll tell you there's one thing it understands and that's money. It understands money and the only way in the world that you're ever going to get them to slow down through Clinton, Oklahoma, or Yukon or El Reno or any of these other towns on their way to Sayre, Oklahoma, is to assess them about $409,000 and I'll bet they'll start slowing down.  *  *  *  (U)nder the Ordinances of little old Yukon, Oklahoma, who apparently is fighting a losing battle against this railroad,  *  *  * I will say this, that the Yukon people and the Police Department both are a fine group of people and that Police Department, they've got an interest in this lawsuit. They would like to do something to slow down that train and without prejudice or feeling I think they're getting tired of having that train roar through there and one of their own witnesses, Balleau, according

to his testimony, he said that that thing came in there at the usual speed of 65 to 70 miles per hour. You have in your your hands—you will have an opportunity to perform the services in addition to the issue of these jet engines in this lawsuit, to do to this railroad what they richly deserve to have done to them.  *  *  *  (Y)ou render a verdict for the plaintiff in this case for the full amount of damages, and there's going to be more happy people in Yukon, Oklahoma—I don't know how else you can slow down these trains—the laws of the towns apparently don't do it—they work by their own laws, and they will still be bringing in experts. I say there's one thing they understand—they got all kinds of things in this rule book—why they got a rule in there that if somebody is on the train that shouldn't be on there, you just leave the body where it lies—you don't incur any expense for medicine—it's in their rule book and they were operating by their own rules and they were operating by their own rules on July 16th, 1960, as they went into the town of Yukon, and they think they are going to keep on operating that way. I don't want you to think about jet engines when you are deciding this lawsuit, but I want you to think about all the people that you can do something for.  *  *  *"

At the conclusion of counsel's remarks just quoted, the following, concerning defendant's objection which was made at that point in the argument occurred:

"Mr. Gibson: I move the Court to admonish the jury that this is not a case of punitive damages and it is not a case of attempting to enforce the City Ordinances, but this is a case seeking to recover damages for two jet engines and that any such remarks that counsel has continuously indulged in is purely inflammatory, designed to inflame the minds of this jury and that what the people of Yukon want has no part of any deliberation that they should make

in assessing the amount of recovery or recovery in this case, and we ask that the Court so admonish the Jury?

"The Court: Overruled.

"Mr. Gibson: Exceptions. I move the Court to declare a mistrial.

"The Court: Overruled.

"Mr. Gibson: Exceptions."

We determine that this argument was prejudicial.

Counsel for plaintiff contends his argument was retaliatory to specific portions of arguments raised by defendant's attorneys. He says that the defendant's attorney went far afield in accusing plaintiff's witnesses of improper motives and in making insinuating references to the presence in the court room of certain Yukon citizens and that a consideration of all the argument rather than just the above-quoted portions bears out that he was retaliating.

█ The contention would require that this court invoke a presumption that the improper argument of plaintiff's attorney was a fair reply to his opponents' argument. We cannot so presume. While it is said in Magic City Steel & Metal Corp. v. Mitchell, Okl., 265 P.2d 473, that where the record shows counsel for a litigant has transgressed the bounds of propriety in argument, the opposing counsel is justified in making a reasonable explanation, our statement there does not excuse a failure to show in the record the initially offensive remarks of opposing counsel. Moreover, if opposing counsel's remarks were improper a duty devolved upon counsel to preserve his objection thereto. Taylor v. F. W. Woolworth Co., 151 Kan. 233, 98 P.2d 114, 118–119. We are in accord with the view expressed in Goucher v. Woodmen Accident Co. of Lincoln, Nebr., 231 Mo.App. 573, 104 S.W.2d 289, 295, and Morse v. Phillips, 157 Miss. 452, 128 So. 336, 337, 338, that an appellee who claims that its lawyer's re-

marks were retaliatory must show in the record that to which it was retaliatory.

Plaintiff's attorney states further that immediately following the overruling of the objection, and before proceeding further with his argument, plaintiff's attorney said: "I don't want you to decide this case on sympathy or on prejudice or anything I have said. I want you to base it on the law as the Court told you, on the evidence * * *". He contends that he undertook to undo any improper result or effect his immediately preceding argument might have had on the jury. We think it is to be doubted that he succeeded in such "undertaking" and that the failure of the trial court to sustain the objection and to admonish the jury to disregard the objectionable remarks resulted in error. Pillot v. City of Houston, Tex.Civ.App., 51 S.W.2d 794, 796.

We conclude that when the trial court refused to sustain defendant's objections and refused to admonish the jury that it should not attempt by its verdict to punish the defendant or enforce the ordinances of Yukon and refused to grant a mistrial, it erred and the error can be corrected only by granting a new trial. City of Shawnee v. Sparks, 26 Okl. 665, 110 P. 884, L.R.A. 1918D, 1; Mayo Hotel Co. v. Danciger, 143 Okl. 196, 288 P. 309; Horany v. Paris, Okl., 369 P.2d 636.

Defendant, in its answer brief, re-argues its motion to dismiss this appeal and relies on grounds previously urged. We previously denied the motion and we adhere to our former ruling thereon. A. A. Murphy, Inc., v. Banfield, Okl., 363 P.2d 942, 949.

The judgment of the trial court is reversed, with directions to grant a new trial.

HALLEY, C. J., and BLACKBIRD, IRWIN, BERRY and HODGES, JJ., concur.

DAVISON and LAVENDER, JJ., concur in result.