Eldon FAULKENBERRY, Appellee,

v.

The KANSAS CITY SOUTHERN
RAILWAY COMPANY, a
corporation, Appellant.

No. 50451.

Supreme Court of Oklahoma.

Oct. 16, 1979.

204

Whit Pate, Poteau, for appellee.

Looney, Nichols, Johnson & Hayes by Burton J. Johnson, Oklahoma City, for appellant.

OPALA, Justice:

In this action under FELA the key question on certiorari is whether there was sufficient evidence of legal infirmity in the procurement of employee's release upon out-of-court settlement to warrant that issue's submission to the jury. If our answer be in the affirmative, we must also consider whether recurring midtrial episodes of misconduct by employee's counsel, combined with trial court's apparent want of firmness in dealing with them, require reversal of judgment.

■ The action here under review, brought against the Kansas City Southern Railway Company [Railroad], resulted in a jury verdict that found employee's release subject to avoidance[1] and awarded him $50,000 in damages. Railroad appealed, claiming, inter alia, that evidence at the trial failed to show any vitiating fraud in securing the release. The Court of Appeals, holding the release impervious to challenge because there was no proof of taint in its procurement, ordered the action dismissed.[2] Employee seeks certiorari. We vacate the Court of Appeals' opinion, reverse the district court's judgment and order new trial.

I

■ Federal law must be applied in measuring the assailability of an out-of-court settlement of a FELA claim. One who seeks to avoid its binding effect bears the burden of showing that the bargain struck is fraught with infirmity either be-

---

1. Seven months after accident [two months after being released to return to light work] employee settled his claim for $25,000.

2. The Court of Appeals, apparently applying to the facts the standards of "actionable fraud", found the employee's release free from legal infirmity. The court relied on that definition of actionable fraud which is necessary to support

a claim by one who dealt with another at arms' length. *Ramsey v. Fowler*, Okl., 308 P.2d 654 [1957]. Here the parties stood in a "special" relation, infra note 4. They were not dealing *stricto sensu* at arms' length and do not hence fall within the purview of actionable fraud as defined in *Ramsey v. Fowler*.

cause of fraud or some material mistake under which both parties were acting.[3] A release of a FELA claim operates as a *waiver of a private right* created and protected by federal law.[4]

Fraud, a generic term with multiple meanings,[5] is divided into actual and constructive.[6] Actual fraud is the intentional misrepresentation or concealment of a material fact which substantially affects another person.[7] Constructive fraud—a breach of either legal or equitable duty—does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose.[8] Constructive fraud, which has the very same legal consequence as actual fraud, may be invoked to prevent harm or to extend protection to *recognized public interests.*

Federal case law is clear that a release secured from one's injured employee to whom the full scope of rights under the FELA had not been explained is tainted and hence assailable.[9] Employer's duty of disclosure stems from the law's attribution of superior knowledge or one that is not anticipated to lie within the fair and reasonable reach of the injured worker. It is hence the employer who stands under a legal obligation to speak and to thus place the worker on a fairly equal footing. When the injured worker must rely upon the employer to communicate the true state of facts on the basis of which he may intelligently judge the expediency of the bargain being offered him, silence will result in constructive fraud.[10] Constructive fraud focuses here both on the "cognitive" and "volitional" state of the affected person at the time of the transaction—on what he/she perceived or knew his rights to be and how well he was able to choose freely between alternative courses thought to be available.

The standards applicable to a valid release or, more correctly, a waiver of rights under FELA are necessarily bottomed on the combined elements of "cognition" and "volition". A waiver is defined as the voluntary or intentional relinquishment

---

**3.** *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 629, 68 S.Ct. 296, 298, 92 L.Ed. 242 [1948]; *Dice v. Akron, Canton and Youngstown R. Co.*, 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 [1952].

**4.** Under FELA employer and employee stand vis-a-vis each other in a recognized "special relationship". *Jealous scrutiny is accorded when courts are called upon to measure the validity of private arrangements for the bartering away of federal rights created as an incident to this special relation.* *South Buffalo Ry. Co. v. Ahern*, 344 U.S. 367, 372–373, 73 S.Ct. 340, 343, 97 L.Ed. 395 [1953].

**5.** *Singleton v. LePak*, Okl., 425 P.2d 974, 978 [1967].

**6.** Fraud can be either actual or constructive. To constitute actual fraud, there must be an intentional deception. On the other hand, constructive fraud does not require intent to deceive. Liability for constructive fraud may be based on a negligent misrepresentation. Even an *innocent misrepresentation* may constitute constructive fraud where there is an underlying right to be correctly informed of the facts. *Steele v. Steele*, 295 F.Supp. 1266, 1269 [D.C. W.Va.1969].

**7.** *Ramsey v. Fowler*, supra note 2.

**8.** Constructive fraud does not require an intent to deceive, and liability for constructive fraud may be based on negligent or even innocent misrepresentation. *U. S. Fibres, Inc. v. Proctor & Schwartz, Inc.*, 358 F.Supp. 499, aff. 509 F.2d 1043, 1047 [6th Cir. 1975].
*Phillips v. Ball*, Okl., 358 P.2d 193, 197 [1960] demonstrates that where one has a duty to speak, but remains silent, he may be guilty of constructive fraud.

**9.** *Apitsch v. Patapsco & Back Rivers Railroad Co.*, 385 F.Supp. 495, 503–504 [D.C.Md.1974]; In *Bay State Dredging & Contracting Co. v. Porter*, 153 F.2d 827, 833 [1st Cir. 1946], a maritime injuries case in which a release was obtained from employee who was without benefit of counsel, the court found that claim agent was under obligation to inform employee of the rights he was giving up in exchange for the settlement offered, because otherwise, the worker would not necessarily be in a position to make an intelligent decision as to whether the offer should be accepted.

**10.** Because the unrepresented employee had been counseled against having his own lawyer, he was forced to rely for advice on the Railroad agent.

of a known right.[11] The party invoking it as a bar is required to show that the person against whom the bar is asserted did, at the time of the transaction, have knowledge, actual or constructive, of the existence of his rights and of all the material facts upon which they depended.[12] No one can be bound by a waiver of one's rights unless it was made with full knowledge of the rights intended to be waived. The fact that one *knows* his rights and intends to waive them must plainly appear.[13] An indispensable ingredient *of effective waiver is a freely exercised will to relinquish a known right.*

■ The assailability of a FELA release is clearly subject to the same test of validity as that applicable to a waiver. To make release effective and hence impervious to attack, federal law appears to require absence of impaired will or of coercive elements coupled with employee's full knowledge of his rights.

■ Employee contends that at the time the release was executed he had not been made fully aware of his rights by the Railroad agent. It is undisputed that the agent [14] did not inform employee that [1] his age, earnings as well as the nature of his injuries should be considered in the evaluation of the claim's worth, [2] the degree of Railroad's negligence should be taken into consideration as the basis of its liability, [3] he would be entitled to a jury trial on the issue of liability and on the amount of the award, [4] the amount of pain and suffering he incurred and would undergo in the future was a legitimate item of compensable damages and [5] the time within which a settlement may be effected could be coextensive with the period of limitations.

When visiting at the hospital, the agent offered to help the employee until he was better and promised to take care of all injury-related medical bills. At various times after the accident and before execution of the release, the agent made loans of money to the employee. Although testimony is somewhat in conflict as to whether the employee ever discussed his claim with a lawyer, it stands undisputed that the agent advised him not to hire a lawyer and warned him that should he do so all advances from the Railroad would stop.[15] Testimony was also in dispute as to whether (a) the employee was under medication and incapable of comprehending the nature of his actions when he signed the release and whether (b) he was having financial difficulties and this fact was known to the agent when he told the employee that all advances would stop if he hired a lawyer.

The Railroad claims that the employee was aware of the effect his release would

11. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 [1938]. "Waiver" had its origin in civil law before Justice Black in *Johnson* transplanted it into criminal law. In *Cordova v. Hood*, 84 U.S. 1, 17 Wall. 1, 21 L.Ed. 587 [1872], the Court said that "waiver" is a matter of intention as well as action. In a 1926 state employers' liability action presenting the question of whether plaintiff could waive her statutory right to sue under the FELA or bring her cause of action under another statute, the court reiterated the principle that a "waiver" is defined as an intentional relinquishment of a known right. *Thompson v. Union Fishermen's Co-Op. Packing Co.*, 118 Or. 436, 246 P. 733, 735 [1926].

12. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 143, 87 S.Ct. 1975, 1985, 18 L.Ed.2d 1094 [1967]. In *Curtis* [a libel action wherein the Court addressed the issue of whether a publishing company waived its right to urge constitutional arguments by failing to assert them before trial], the Supreme Court said that although constitutional objections may be waived by failure to timely raise them, an effective waiver, as established by the *Johnson* criteria [supra note 11], must be one of a known right or privilege. The Court was unwilling to find a waiver absent clear and compelling circumstances.

13. *Universal Gas Co. v. Central Illinois Pub. Serv. Co.*, 102 F.2d 164, 168 [7th Cir. 1939]. Cf. *Schneckloth v. Bustamonte*, 412 U.S. 218, 242, 93 S.Ct. 2041, 2055, 36 L.Ed.2d 854 [1973].

14. A lawyer and employee of Railroad for 28 years.

15. The agent stated that it was not the Railroad's policy to finance litigation against itself. He further explained that if their advances would stop the employee would still be receiving "sickness benefits" from the retirement fund which was a separate benefit from loans made by the Railroad. The latter would continue until the employee was well.

have under the FELA and that he made an effective waiver of his rights. Its argument rests mainly upon the fact that two years earlier the employee had incurred an on-the-job injury which resulted in a settlement made with the same agent. The Railroad also urges that no duty evolved upon it to reveal those matters which, the employee claims, were essential to his voluntary and knowledgeable relinquishment of his rights.

The employee's injuries prevented him from ever returning to his pre-accident job. He was required to submit his resignation as a condition of settlement. The transaction here was hence vastly different in its legal effect from the situation the employee had encountered when dealing with the agent for settlement of his prior personal injury. Earlier he was neither faced with giving up his livelihood nor with securing compensation for extensive and disabling injuries.

The record in this case does not indicate any intention by the agent to deceive the employee for the purpose of inducing him to sign the release. While actual fraud may be absent, the facts are nevertheless sufficient to submit for the jury's determination the threshold question of whether the employee effectively waived his rights under the FELA. Whenever the necessary cognitive elements are lacking, constructive fraud may be present. If knowledge be deficient, a free exercise of choice is likely hampered and the release vulnerable to jury scrutiny.

There was ample evidentiary basis for a jury's finding that the employee, when giving the release, was in no position to exercise his choice freely because he lacked that comprehension of the nature and extent of his rights which was necessary for proper evaluation of his claim. A verdict in a FELA action can be set aside only when there is a complete absence of probative facts to support the conclusion reached.[16] The appellate court is not free to reweigh the evidence and set aside the verdict merely because the jury could have drawn a different inference or because the court would consider another result more reasonable.[17]

Under the facts adduced we may not declare, as a matter of law, that the Railroad's procurement of the employee's release reflects a transaction that is legally unassailable and hence not susceptible of being avoided.

## II

Lastly, we are called upon to decide whether repeated midtrial misconduct of the employee's counsel, coupled with trial judge's lack of firmness and control in dealing with it, deprived the Railroad of a fair trial. Using considerable space of its rather lengthy brief, the Railroad complains of recurrent in-trial exposure to ridicule, belittling and demeaning by counsel's unprovoked, disruptive remarks and improper argument imputing to the Railroad grossly abusive and inherently unfair treatment toward *all* injured workers in its employ. It would serve no useful purpose to recite here in detail each of the many instances which reveal counsel's effort to communicate to the jury, obliquely or by innuendo, in gratuitous exclamations or in course of argument, inadmissible matter of a highly prejudicial, irrelevant and inflammatory character. It suffices to say the record leaves us without any doubt that the Railroad was denied here its basic right as a litigant to an orderly process untainted by infusion of gross prejudice and free from unprovoked, intolerable abuse of its legitimate defense posture at trial.[18] It is apparent that the misconduct of employee's counsel so infected all the phases of the case that a partial retrial on some rather than all the issues

16. *Lavender v. Kurn*, 327 U.S. 645, 652–653, 66 S.Ct. 740, 744, 90 L.Ed. 916 [1946].

17. *Tennant v. Peoria & Pekin Union R. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 [1944].

18. *Horany v. Paris*, Okl., 369 P.2d 636, 638 [1962]; *Chicago R. I. & P. R. Co. v. American Airlines, Inc.*, Okl., 408 P.2d 789, 793 [1965]; *Roberts v. Lewis*, Okl., 441 P.2d 350, 355 [1968]; *Missouri-Kansas-Texas Railroad Company v. Drumb*, Okl., 454 P.2d 308, 313 [1969].

would not be an appropriate cure. Our remand must hence be for a new trial *on all* issues.[19]

Since this cause must be remanded for a new trial, we find it unnecessary to discuss any of the alleged errors in the instructions given to the jury.

The opinion of the Court of Appeals is vacated, trial court's judgment is reversed and cause remanded for a new trial.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

HODGES, J., concurs in part; dissents in part.

HODGES, Justice, concurring in part, dissenting in part:

I address my dissenting opinion to that portion of the majority opinion which reverses for a new trial on assertions of misconduct by plaintiff's counsel and the trial judge's lack of firmness and control.

After perusing a lengthy record of 640 pages, I conclude the defendant had a fair and just trial. In my opinion the case, though heatedly contested and at times overzealously expounded, was properly tried to a jury by competent counsel on both sides and presided over by a conscientious and able judge.

In my opinion the most serious assertion of misconduct was plaintiff counsel's statement in his closing argument at pages 470 and 471, concerning the claim agent of the defendant, which statements, I agree, were lacking in propriety and outside the record. That portion of the closing argument should have been, even in absence of a proper objection, stricken and the jury admonished not to consider it in their deliberation. However, in view of the strong and convincing evidence in support of abolition of the signed release and the diminutive amount of damages awarded by the jury, considering the extent of the plaintiff's in-

juries, I fail to find the statements of counsel and other assertions of misconduct were so prejudicial as to justify a reversal for a new trial.

---

**19.** Admissibility of evidence and propriety of argument to the jury are procedural matters which in FELA actions are governed by the law of the forum. Judgments may be set aside when it clearly appears that improper conduct may have influenced the verdict. *St. Louis-San Francisco Railway Company v. King*, Okl., 278 P.2d 845, 850 [1954].