1999 OK CIV APP 78

**Roy Dean STURGEON and Charlene Edith Sturgeon, Appellants,**

v.

**RETHERFORD PUBLICATIONS, INC., an Oklahoma corporation; and Bill Retherford, individually and as owner of Retherford Publications, Inc., jointly and severally, Appellees.**

**No. 92,209.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 15, 1999.

---

Brad Smith, Brad Smith, P.C., Jenks, Oklahoma, Murray L. Bristol, Bristol Law Firm, Dallas, Texas, Chadwick R. Richardson, Richardson and Ward, Tulsa, Oklahoma, For Appellants.

Jack L. Brown, James E. Weger, Thomas H. Dobbs, Marc R. Stimpert, Jones, Givens, Gotcher & Bogan, P.C., Tulsa, Oklahoma, R. James Unruh, Tulsa, Oklahoma, Michael Minnis, Michael Minnis & Associates, Oklahoma City, Oklahoma, For Appellees.

## OPINION

TAYLOR, J.

¶ 1 Plaintiffs, Roy Dean and Charlene Edith Sturgeon, appeal the trial court's grant of a motion to dismiss by Defendants, Retherford Publications, Inc. (RPI), and Bill Retherford (Retherford), for failure to state a claim for which relief may be granted. Based on our review of the record and the applicable law, we reverse and remand.

### STANDARD OF REVIEW

¶ 2 The issue on review is whether Plaintiffs have pleaded a cognizable claim against a newspaper and its owner, based on alleged publication of false and defamatory statements about Plaintiffs and their involvement in a neighborhood property dispute, during the course of Defendants' campaign encouraging local authorities to take action. We conduct a de novo examination of Plaintiffs' petition to determine whether relief is possible "under any set of facts that could be proved consistent with the pleadings' allegations." *Lockhart v. Loosen*, 1997 OK 103, ¶ 4, 943 P.2d 1074, 1077. All allegations are presumed to be true and are construed favorably to the pleader. *Wilson v. Still*, 1991 OK 108, 819 P.2d 714. The motion should be

denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. 12 O.S. 1991 § 2012, committee comment; *Brock v. Thompson*, 1997 OK 127, ¶ 7, 948 P.2d 279, 284. "Under most circumstances a plaintiff's petition is *only* dismissible (1) for want of a cognizable legal theory of liability or (2) for insufficient facts under the advanced theory." *Lockhart*, 1997 OK 103 at ¶ 5, 943 P.2d at 1078(footnote omitted). A petition "must not be dismissed . . . unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief." *Frazier v. Bryan Memorial Hosp. Auth.*, 1989 OK 73, ¶ 13, 775 P.2d 281, 287. The trial court "should not ask whether the petition points to an appropriate statute or legal theory, but whether relief is possible under *any set of facts* that could be established consistent with the allegations." *Indiana Nat'l Bank v. State ex rel. Dept. of Human Serv.*, 1994 OK 98, ¶ 4, 880 P.2d 371, 375–76 (emphasis added).

■ ¶ 3 Motions to dismiss generally are looked upon with disfavor. Thus, the burden of demonstrating a petition's insufficiency is not a light one, and is on the party moving for dismissal.

## BACKGROUND FACTS

¶ 4 Plaintiffs' petition alleges this dispute concerns a cul-de-sac once located on the street where Plaintiffs and Retherford live in Broken Arrow. Retherford is the owner of RPI, publisher of *The Broken Arrow Ledger*, a local newspaper. The cul-de-sac originally was located on Plaintiffs' property, but at some point, Plaintiffs apparently built a wall where the cul-de-sac had been. Some time later, the *Ledger* published an editorial, entitled "The Rape of a Neighborhood," a copy of which is attached to the petition. The editorial complains about the lack of a cul-de-sac on the street, the danger posed to neighborhood safety, and the City's failure to correct the situation.

¶ 5 Plaintiffs' petition lists theories of recovery entitled intentional infliction of emotional distress; negligent infliction of emotional distress (a theory later dropped); abuse of process; gross negligence; fraudulent misrepresentation; slander and libel; false light invasion of privacy; and negligent

hiring, supervision and retention. The petition's allegations include the following:

Retherford, in his individual capacity and as President of RPI used improper and severe pressure on the City of Broken Arrow in order to pursue [Retherford's] personal vendetta against the Plaintiffs . . . threatened to sue the City of Broken Arrow unless it sued [Plaintiffs] . . . told other people that [Plaintiffs] were at fault for a cul-de-sac not being built in their neighborhood . . . went on an offensive attack by omitting material facts that placed [Plaintiffs] in a false light to the public . . . held neighborhood meetings wherein he misrepresented the truth regarding the property dispute between the City and the Plaintiffs [and] used these meetings in order to disparage and intentionally harm [Plaintiffs'] reputation . . . pressured the City to act in a manner to harm [Plaintiffs] and protect his small portion of land that could be affected if the lawsuit ended in [Plaintiffs'] favor. RPI . . . printed articles that tried to pressure the City to continue its lawsuit . . . place [Plaintiffs] in a false light before the community . . . reported on the lawsuit in a manner to falsely represent that the Plaintiffs were intentionally prolonging the lawsuit in order to continue the inconvenience and danger to the people in the neighborhood . . . and maintain the hostile environment created against the Plaintiffs.
. Retherford intentionally misrepresented the truth regarding the lawsuit . . . based on his omission of the material fact that there never would have had to be a lawsuit if he would have agreed to give a small portion of his land, as the Plaintiffs and the other neighbor agreed to.

¶ 6 The petition further alleges that after the City lost the referenced lawsuit to establish an easement:

[Retherford], [i]nstead of accepting a jury's verdict . . . once again, refused to accept a compromise proposed by the City and the Plaintiffs . . . [and began] pressuring the City to condemn [Plaintiffs'] property and interfering in anything that could affect Retherford's ability to continue his plan to ruin [Plaintiffs] within the community . . . used undue pressure and intimi-

dation against individuals at the City and the Broken Arrow School District to try to get them to assist him in his private effort to have the [Plaintiffs'] property destroyed and continue the reputation Retherford started that the Plaintiffs are the bad guys in the neighbor-hood regarding the property dispute.

¶ 7 The petition accused Retherford, RPI, or both, of publishing the "Rape of a Neighborhood" editorial about the dispute "in order to defame and place the Plaintiffs in a false light and invade their privacy." Though neither the City nor the school district would become involved in the dispute, the petition claims Plaintiffs nonetheless have suffered damage to their reputation, "financial loss, pain and suffering, severe mental anguish and emotional distress" as a result of Defendants' "wanton and reckless" acts.

¶ 8 The copy of the editorial attached to the petition is considered part of the petition for purposes of our analysis. *Gaylord Entertainment Co. v. Thompson,* 1998 OK 30, n. 10, 958 P.2d 128, 136 n. 10. The author of the editorial criticizes the City for failing to obtain an easement to create the cul-de-sac, discusses the hazards presented to the neighborhood from the lack of a turn-around on the otherwise dead-end street, and encourages the City to bring condemnation proceedings.

¶ 9 Defendants moved to dismiss, claiming Plaintiffs had not alleged, and could not allege, any set of facts entitling them to relief. Based solely on the petition and the attached editorial, the trial court sustained the motion. Plaintiffs sought leave to amend, but the court, finding the petition's defects could not be remedied by amendment, denied their motion. Plaintiffs have appealed.

## ANALYSIS

### Plaintiffs' Libel and Slander Theories of Recovery

¶ 10 To impose liability for defamatory falsehoods, a plaintiff generally must plead and prove (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication. Restatement (Second) of Torts § 558 (1977). A plaintiff who is a public figure who complains of defamation must prove the further element of malice in the publication; here, however, there is no contention that Plaintiffs were public figures, and proof of malice therefore is not required. *See Colbert v. World Publ. Co.,* 1987 OK 116, 747 P.2d 286.

¶ 11 One form of defamation, libel, is statutorily defined as an unprivileged publication, by written or printed words, of false or malicious matter that "exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation." 12 O.S.1991 § 1441. A writing is libelous *per se* "when the language used therein is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff." *Fite v. Oklahoma Pub. Co.,* 146 Okla. 150, 293 P. 1073 (1930) (syllabus by the court). In contrast, a false publication "is deemed libelous per quod if the words are reasonably susceptible of both a defamatory and an innocent meaning." *Brock v. Thompson,* 1997 OK 127, ¶ 27, 948 P.2d 279, 292. Whether a writing is libelous per se is always a question of law for the court; libel *per quod* requires proof of extrinsic facts to show a defamatory meaning, and thus presents a fact issue for determination by a jury. *Id.*

¶ 12 A party relying on a publication that is not *per se* defamatory must plead and prove special damages. *Miskovsky v. Tulsa Tribune Co.,* 1983 OK 73, 678 P.2d 242. There the court, citing *Fite v. Oklahoma Pub. Co.,* stated:

[W]here the article itself is not libelous per se, there must be an allegation of special damages, before a recovery can be had. ... It is insufficient to allege generally that the plaintiff "was and is greatly and permanently injured and damaged in his good name and reputation and was and is exposed to public contempt, hatred, and ridicule and has been caused to resign his

position with the said city of Ardmore and has been damaged in his business and reputation in the amount of $10,000" without showing by proper averment how the special damages were occasioned.

1983 OK 73 at ¶ 21, 678 P.2d at 248.

 ¶ 13 Slander is defined at 12 O.S. 1991 § 1442, as "a false and unprivileged publication, other than libel," that imputes criminal activity to a person; "[t]ends directly to injure him" in his business or profession; or that "by natural consequences, causes actual damage." Slander involves publication of defamatory matter by means of spoken words, gestures, or communication by other than written or printed words. *See* Restatement (Second) of Torts, § 568(2) (1977).

¶ 14 In support of their motion to dismiss, Defendants asserted (1) the editorial in question did not specifically name Plaintiffs, therefore it was not "of and concerning" Plaintiffs and could not be libelous; (2) the comments of which Plaintiffs complained were not *per se* actionable, and Plaintiffs had not pled special damages, therefore they stated no claim; (3) truth is a defense and the editorial "merely recites the truth;" (4) Defendants' alleged statements were privileged pursuant to 12 O.S.1991 § 1443.1(A)(Third), concerning "fair and true reports" of legislative or judicial proceedings; and (5) the editorial was protected because it was Defendants' "fair comment" on a matter of public interest, made in good faith. In addition, Defendants asserted all of the alleged statements were protected by the *Noerr–Pennington* doctrine, under which, they claimed, speech related to the process of petitioning the government for change is constitutionally protected and cannot give rise to liability.[1] *The only specific statement by Defendants with which the trial court was presented on the motion to dismiss, however, was the editorial.*

¶ 15 Because the first, third, and fifth defenses listed above deal only with the editorial and do not go to the remainder of the petition, these grounds cannot have formed the basis for the trial court's decision to dismiss Plaintiffs' claim in its entirety. We therefore do not address the merits of those arguments here.

 ¶ 16 Whether a publication is libelous *per se* presents a question of law, and judicial review of the issue "turns on whether the statements made in the publication, when construed by the most natural and obvious meaning and in the sense that they would be understood by those to whom they were addressed, charged the plaintiff with anything that the plaintiff might not have legally and properly done." *Miskovsky,* 1983 OK 73, ¶ 18, 678 P.2d at 247. Though we agree—without holding—that a fair reading of the editorial attached to the petition does not constitute libel *per se,*[2] there were other allegations made by Plaintiffs in their petition to the effect that Retherford misrepresented the truth in order to "disparage and intentionally harm" Plaintiffs; and that RPI "reported on the lawsuit in a manner falsely representing that the Plaintiffs were intentionally prolonging the lawsuit," and intentionally endangering the neighborhood, for no reason other than maintaining a hostile environment against Plaintiffs and protecting Retherford's property value. The specific statements are not revealed by the record, however; thus, the trial court could not have properly found that these statements did not constitute libel or slander *per se,* that allegations of special damages therefore were required,[3] or that special damages could not be alleged.

---

1. Defendants also asserted this argument in defense of Plaintiffs' claim of false light invasion of privacy.

2. Plaintiffs appear to argue that *per se* defamation occurred because the editorial uses the word "rape" in its title. However, a complete and fair reading of the editorial shows that the use of this word was metaphorical only, and no reasonable interpretation could conclude that the author was accusing or suggesting Plaintiffs had committed the crime of rape.

3. Though Plaintiffs argue otherwise, Oklahoma's adoption of notice pleading has not eliminated the need to allege special damages when libel or slander *per quod* is claimed. *See Niemeyer v. U.S. Fidelity and Guar. Co.,* 1990 OK 32, ¶ 5, 789 P.2d 1318, 1321 ("With the exception of fraud, mistake, denial of performance, and special damages, Oklahoma no longer requires strict compliance with terms of art and legal phraseology when pleading a cause of action."); 12 O.S.1991 § 2009(G).

¶ 17 Defendants also claimed the alleged statements were privileged pursuant to 12 O.S.1991 § 1443.1(A)(Third). The statutory "fair-report privilege" set forth in this subsection protects speech that is "a fair and true report of any legislative or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, ... criticisms thereon, and ... criticisms upon the official acts of any and all public officers, except where the [statement] falsely imputes crime to the officer so criticized." [4]

¶ 18 However, the allegations of Plaintiffs' petition are not limited to statements made during, or reports on, legislative or judicial meetings. The petition mentions "neighborhood meetings" and refers to false and malicious statements made against them by Retherford individually and not necessarily in the context of a newspaper report. Again, the specific statements of which Plaintiffs complain are not in the record, were not before the trial court, and thus could not properly have been considered on the § 2012(B)(6) motion. Thus, if the basis for the trial court's decision was statutory privilege, the decision was premature.

¶ 19 Finally, if the basis for the trial court's decision was Defendants' argument that the "*Noerr–Pennington*" doctrine bars the claim, we again find the trial court erred.

¶ 20 The *Noerr–Pennington* doctrine is based on two decisions by the United States Supreme Court—*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)—which hold that a party's attempt to influence enforcement or passage of legislation is not a prohibited activity under the Sherman Act, 15 U.S.C. § 1, even if the party's motive is to hurt or destroy its competition. "Although the doctrine had its birth in the context of antitrust litigation ... it has been extended to several direct petitioning activities—such as those of accessing the courts, lobbying legislators and pressing the initiative process—as well as to conduct designed to influence public sentiment for the passage and enforcement of laws." *Brock v. Thompson*, 1997 OK 127 at ¶ 8, 948 P.2d at 285 (footnotes omitted).

¶ 21 In *Brock*, the court found it unnecessary to extend the *Noerr–Pennington* doctrine to the state law question at issue in the case, finding adequate protection for the speech in the right to petition the government for redress of grievances. The court explained:

> The right of the people to petition the government for redress of grievances is safeguarded in Art. 2, § 3 of the state constitution. Legitimate attempts to influence government action are protected by this fundamental guarantee. The clear import of the right-to-petition clause is to immunize from exposure to legal action persons who attempt to induce the passage or enforcement of law or to solicit governmental action, even though the result of such activities may indirectly cause injury to others....

1997 OK 127 at ¶ 18, 948 P.2d at 289(footnotes omitted). The court in dicta defined the right to petition as being "historically the right to complain about and to the government," *id.* at n. 38, and described it further as being "a basic freedom in a participatory government, closely related to freedom of speech." *Id.* at n. 37.

¶ 22 Defendants assert the comments of which Plaintiffs complain are constitutionally protected speech under *Noerr–Pennington*, because the comments involve Defendants' attempt to influence the government. However, even if we assume for purposes of argument that *Noerr–Pennington* would apply, the doctrine does not provide absolute immunity from civil liability for defamation. As noted above, the *Noerr–Pennington* cases did not deal with a plaintiff's

---

**4.** In addition to the statutory privilege found at § 1443.1, Oklahoma also recognizes the common-law "fair comment" defense to a defamation action. This defense may apply when the comment (a) deals with a matter of public concern; (b) is based on true or privileged facts; and (c) represents the actual opinion of the speaker, but is not made for the sole purpose of causing harm. *See Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, 958 P.2d 128. For the same reasons as discussed in the text concerning the statutory privilege, however, this defense is insufficient to warrant dismissing Plaintiffs' claim entirely at this point in the proceedings.

claim of defamation; rather, the cases concerned a party's potential liability under the Sherman Act for attempting to influence government action that ultimately had the effect of harming the party's competitors. The basic holding of the *Noerr* and *Pennington* cases was that the legality, under the Sherman Act, of anti-competitive conduct is not affected by the *motive or purpose* behind that conduct, where the conduct consists solely of a party's activities in trying to influence public officials. The *Noerr–Pennington* cases did not hold that all of a party's words and conduct in attempting to accomplish its purpose are absolutely privileged. In fact, even though an individual's motive or purpose in attempting to influence public action may be deemed irrelevant and immune from attack, the words that the individual uses in trying to accomplish the purpose are not automatically protected if those words are false and defamatory. This rule applies to First Amendment rights generally, as well. *See McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).

¶ 23 The right to petition the government for redress of grievances does allow some leeway in what a speaker may say, as long as the speaker can show a "rational connection" between the statement and the speaker's campaign for political change. *See Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, 958 P.2d 128. "Political speech," entitled to protection under the Oklahoma Constitution, is recognized as being "any expression concerning the ideas and art of governing." *Id.* at ¶ 14, 958 P.2d at 139. The court in *Gaylord* further held:

> The political process of popular lawmaking is clearly the subject of the petitioners' news articles and editorials.... *If there is a rational connection between the communication or utterance complained of as defamatory and the author's quest for a political change, the communication should be viewed as protected political speech and a means of securing a change in the government's conduct of its business. While the so-called offending conduct may be injurious (or offensive) to the plaintiffs' interests, it nonetheless constitutes protected political speech which must be more jealously and intensely guarded than any other form of permissible expression.*

*Id.* at ¶ 17, 958 P.2d at 140–41 (footnotes omitted)(emphasis added).

¶ 24 As is the case with libel *per se,* "[i]t is always a question for the court to determine as a matter of law whether a published statement is within [a] protected class of speech" that may exempt it from being a basis for a defamation claim. *Id.* at ¶ 19, 958 P.2d at 142. And here, again, as was the situation with the libel *per se* issue, except for the newspaper editorial, the specific statements of which Plaintiffs complain are not revealed by the record, nor is it clear that other allegations could not have been added by amendment. Thus, the trial court could not *properly* have found that Defendants' comments—whatever they were—were entitled to constitutional protection.

¶ 25 Having determined the trial court prematurely dismissed Plaintiffs' petition without leave to amend for lack of a cognizable claim for defamation, we need not address at length here the other theories of recovery enumerated in Plaintiffs' petition. For the guidance of the parties and the trial court on remand, however, we note the following concerning Plaintiffs' other theories of recovery:

### False Light Invasion of Privacy

¶ 26 The elements of false light/invasion of privacy are based on the Restatement (Second) of Torts §§ 652D and 652E:

> [652D]: "Publicity Given to Private Life
>
> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public."
>
> [652E]: "Publicity Placing Person in False Light
>
> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to

liability to the other for invasion of his privacy, if

> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*McCormack v. Oklahoma Publishing Co.*, 1980 OK 98, ¶ 9, 613 P.2d 737, 740.

¶ 27 The disclosure must be a public disclosure, and the facts must be private and of no legitimate public concern. In addition, the disclosure must be one that would be offensive to a reasonable person. It is not necessary, however, that the statements be untrue. *Id.*

¶ 28 The court in *Colbert v. World Publishing Co.*, 1987 OK 116, 747 P.2d 286, noted that this theory of recovery overlaps the defamation theory and may serve as an alternative or cumulative avenue for relief. The main difference between the two theories, the court stated, lies "in the interests sought to be protected and the degree of fault which must be shown in order to effect recovery. In an action for libel, recovery is sought primarily for the injury to one's reputation. The focus of the action is on the effect of the publication on what others may think of the person. Under the theory of false light invasion of privacy, the interest to be vindicated is the injury to the person's own feelings." *Id.* at ¶ 7, 747 P.2d at 289 (footnotes omitted).

¶ 29 We agree that the petition as presented to us is insufficient to recover under this theory. We cannot say unequivocally, however, that Plaintiffs can allege no set of facts that would prevent their recovery under this theory. They should at least be given leave to try to do so, and only after that effort fails should the trial court resort to dismissal with prejudice or summary judgment, as the case may warrant.

### Intentional Infliction of Emotional Distress

¶ 30 A claim for intentional infliction of emotional distress requires proof that (1) the complained of actions in the setting in which they occurred were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society; and (2) the defending party intentionally or recklessly caused severe emotional distress beyond that which a reasonable person could be expected to endure. *See Breeden v. League Serv. Corp.*, 1978 OK 27, 575 P.2d 1374, incorporating the standards set forth in Restatement (Second) of Torts § 46 (1965); *see also Marshall v. OK Rental & Leasing, Inc.*, 1997 OK 34, 939 P.2d 1116.

¶ 31 Whether Plaintiffs are able to state a claim under this theory depends, at least in part, on whether they can state a claim under their defamation theory as well as on the "outrageousness" of the Defendants' alleged conduct. Though it is somewhat difficult to imagine a scenario, based on the Plaintiffs' current allegations, that would allow us to hold that the conduct was so outrageous so as to support this theory, we cannot say, based on what is before us now, that such allegations absolutely do not or cannot exist. Again, opportunity for amendment is required under these circumstances.

### "Gross Negligence"

¶ 32 Plaintiffs also have attempted to characterize a separate theory of recovery for "gross negligence." This theory is based on essentially the same factual allegations as Plaintiffs' defamation and invasion-of-privacy theories, and our discussion concerning those theories applies here, as well.

### Abuse of Process

¶ 33 The elements of an abuse of process claim are "(1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." *Greenberg v. Wolfberg*, 1994 OK 147, ¶ 22, 890 P.2d at 905 (footnotes omitted). The basis of Plaintiffs' complaint on this theory appears to be that Defendants should not be permitted to encourage the government to bring an action against an individual in order to achieve something the Defendants want. Plaintiffs, though they were the defendants in the City's suit, have not sued the City. They refer us to no Oklahoma case that recognizes such use of an abuse of process claim, and we do not find any of the authority

which they cite to us persuasive on this point. Thus, we would agree with the trial court that this theory of recovery is not appropriate under the pleaded facts.

### False or Fraudulent Misrepresentation

¶ 34 To recover under the theory of fraudulent misrepresentation, or deceit, a plaintiff must prove (1) the defendant made a material misrepresentation; (2) that it was false; (3) the defendant made the representation knowing it was false or in reckless disregard of the truth; (4) that the defendant made it with the intention that it should be acted upon *by the plaintiff*; (5) that *plaintiff* acted in reliance upon it; and (6) that plaintiff thereby suffered injury. *Ramsey v. Fowler*, 1957 OK 61, 308 P.2d 654. All these allegations must be proven with a reasonable degree of certainty, and all of them must be found to exist. *Id.*

¶ 35 Obviously, an essential element of this tort is proof of detrimental reliance on the misrepresentation *by the person claiming injury*. Just as obviously, Plaintiffs in the case at bar do not, and cannot, allege their own reliance on any misrepresentation by Defendants. Thus, they cannot properly seek recovery under this legal theory.

### Negligent Hiring and Retention

¶ 36 Though Plaintiffs' original petition contained a theory of recovery labeled "negligent hiring and retention," Plaintiffs did not include the trial court's dismissal of this theory among their allegations of error on appeal, nor did Plaintiffs contest Defendants' motion to dismiss on this issue in the trial court. Issues which have not been raised in the petition in error are presumed to be abandoned, and will not be considered on appeal. *Kirschstein v. Haynes*, 1990 OK 8, 788 P.2d 941.

### CONCLUSION

¶ 37 Having determined the trial court erred as a matter of law in dismissing Plaintiffs' petition without leave to amend, we reverse and remand for further proceedings in accordance with the views expressed herein.

¶ 38 REVERSED AND REMANDED.

GOODMAN, P.J., and RAPP, J., concur.