**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 12 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MATTHEW APPLEGATE,
an individual,

      Plaintiff-Appellant,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, a foreign corporation,

      Defendant-Appellee.

No. 02-7055
(D.C. No. 01-CV-497-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **McKAY** , and **O'BRIEN** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In this diversity case, plaintiff Matthew Applegate appeals from the district court's grant of summary judgment to defendant State Farm Mutual Automobile Insurance Company (State Farm) on Mr. Applegate's complaint alleging that State Farm mishandled his insurance claim. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## I. Background

In 1998 sixteen-year-old Matthew Applegate was riding as a passenger in his parent's car, which was driven by fifteen-year-old Nicole Underwood. The car collided with a vehicle driven by Mitchell Plett, seriously injuring Mr. Applegate's spine. As a result of the accident, Mr. Applegate is now a quadriplegic.

State Farm representative Greg Ellis was assigned the initial insurance claim for Mr. Applegate. The Applegate family had three cars insured with State Farm, with two carrying uninsured/underinsured motorist (UM) coverage limits of $25,000 per person, and one carrying UM coverage limits of $10,000 per person. When he discovered possible UM claims, Ellis transferred those claims to Kris King in State Farm's separate UM unit. Ellis retained the liability portion of Mr. Applegate's claim, which included claims against Underwood and Plett.

Nicole Underwood's parents were also insured by State Farm, so Ellis contacted their agent's office to determine whether they had any policy coverage

-2-

applicable to the accident. When told that they had several policies, Ellis states that he requested a staff member in the agent's office to set up a claim on the policy in the Underwood household with the highest auto liability limits. According to Ellis, the staff member told him that it appeared that all of the policies in the Underwood household had liability limits of $25,000 per person. The staff member ultimately reported the liability claim on a policy covering a Plymouth Voyager for $25,000.

In October 1998 Ellis advised the Applegate family of the Underwood policy and sent them a certificate of coverage showing the policy number and liability limit. Meanwhile, Kris King separately offered the Applegates $60,000, representing the stacked per-person UM coverage limits on each of the Applegate's three policies. Because Matthew Applegate was a minor, King retained attorney Jon Starr to obtain court approval of the proposed settlement. In January 1999 Starr contacted the Applegate family's attorneys, Jim and Nancy Lloyd, and indicated Starr's authorization to formally settle the UM claims. Additionally, Starr advised the Lloyds of his authority to settle the liability claims for $85,000, representing $50,000 from a policy on the Plett vehicle, $10,000 from a policy on the Applegate vehicle, and $25,000 from the policy maintained by the Underwoods, for a total settlement offer of $145,000.00.

On January 19, 1999, the Lloyds separately requested Starr, King, and Ellis to send certified copies of the declaration sheets for all of the policies in effect at the time of the accident. Ellis responded one week later by sending the Lloyds a certificate of coverage verifying the policy limits on the Underwood's liability policy.

On Friday, January 29, Ellis discovered another policy owned by the Underwoods that had a liability limit of $100,000.00 per person. Ellis informed Starr of the discovery that day and informed the Lloyds on the following Monday. Ellis evaluated the claim under the higher policy and ultimately received authority to offer $100,000.00 in place of the $25,000.00 policy. Accordingly, Starr formally offered to settle all of Mr. Applegate's claims for $220,000.00, and requested the Lloyds to advise Starr when the Applegates were ready to move forward with the settlement and court authorization process. The Lloyds responded by letter, dated July 13, 1999, indicating that the Applegates were ready to proceed. Starr scheduled a court date for July 29, 1999, but the Applegates canceled. Soon after, Matthew Applegate turned eighteen, and State Farm paid him $60,000 in UM benefits. The parties never settled the liability claims, and Mr. Applegate sued.

Mr. Applegate's complaint alleged deceit, breach of contract, institutional bad faith, and negligent training and supervision. The allegations derived from

Mr. Applegate's belief that Ellis had knowledge of the higher Underwood policy from the beginning, and that he withheld this information and attempted to force the Applegates into settling for the smaller amount. State Farm subsequently moved for summary judgment, and the district court granted the motion by order dated March 21, 2002. Mr. Applegate's appeal raises two issues in connection with the district court's order.

## II. Standard of Review

When reviewing a diversity action, we look to state substantive law, but we follow federal law in determining the propriety of the district court's grant of summary judgment. *Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1016 (10th Cir. 2001). "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is proper if the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

248 (1986). "[A]n issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Simms,* 165 F.3d at 1326. In considering whether summary judgment was appropriate, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.*

### III. Deceit Claim

Granting State Farm's motion for summary judgment on Mr. Applegate's cause of action for deceit, the district court concluded:

> [P]laintiff cannot establish this cause of action because there is no evidence of a representative of State Farm deceiving him. Plaintiff testified he never spoke to anyone at State Farm and never saw any correspondence from State Farm regarding his case. Further, plaintiff's father testified he did not notify plaintiff of the $25,000.00 offer until after the $100,000.00 offer was made. In fact, plaintiff still has not accepted the $100,000.00 offer. An essential element of a fraud or deceit claim is reliance on the misrepresentation by the person claiming injury. There is absolutely no evidence plaintiff relied on any representation made by State Farm since no representation was made to him and he apparently did not act on any representation. . . . [P]laintiff has simply failed to produce evidence showing that defendant State Farm tried to deceive him.

Aplt. App. Vol II, doc. 10 at 7-8 (citation omitted). On appeal, Mr. Applegate argues that these statements demonstrate that "the trial court incorrectly assumed that because the misrepresentation at issue was made to [Mr. Applegate's] attorney and not directly to [Mr. Applegate], the misrepresentation was not actionable." Aplt. Br. at 11. In response, State Farm argues that the particular

-6-

recipient of the alleged misrepresentation in this case is immaterial because

Mr. Applegate has not demonstrated a cause of action for deceit in any event.

We agree.

As the district court correctly noted, to establish a cause of action for deceit

under Oklahoma law a plaintiff must prove:

> (1) the defendant made a material misrepresentation; (2) that it was false; (3) the defendant made the representation knowing it was false or in reckless disregard of the truth; (4) that the defendant made it with the intention that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff thereby suffered injury.

*Sturgeon v. Retherford Publ'ns, Inc.,* 987 P.2d 1218, 1228 (Okla. Ct. App. 1999)

(emphasis omitted) (citing *Ramsey v. Fowler,* 308 P.2d 654, 656 (Okla. 1957)).

Most obvious in the present case is Mr. Applegate's failure to demonstrate that he

acted on the alleged misrepresentation of the liability claim and that he has

suffered injury as a result. Neither Mr. Applegate nor his representatives

accepted the offer on the lower policy limit, which Mr. Applegate claims was

purposefully understated. Additionally, Mr. Applegate has produced no

evidence that he suffered injury as a result of the offer itself. Finally, because

Mr. Applegate has also not accepted the $100,000.00 offer, he cannot plausibly

claim that he has suffered from not receiving that money. On summary judgment,

issues concerning all other elements of the claim become immaterial if the

plaintiff does not come forward with sufficient evidence on any essential element

of the cause of action. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). Accordingly, because Mr. Applegate failed to make a showing that he suffered injury as a result of his reliance on the alleged misrepresentation, the district court properly granted summary judgment for State Farm on Mr. Applegate's claim of deceit.

## IV. Bad Faith Claim

Mr. Applegate also contends the district court erred by granting State Farm summary judgment on his claim of bad faith. This cause of action was originally based on allegations that State Farm's purposeful mishandling of his claims was "consistent with approved company-wide practices or policies which reward and encourage the systematic reduction or avoidance of the payment of claims in an effort to utilize its claim-handling process as a profit center for the company." Aplt. App. Vol. I, doc. 1 at 5. In its motion for summary judgment, State Farm argued that the only policy limits in controversy were those issued to the Underwoods. State Farm then correctly advised the court that Oklahoma law does not impose a duty of good faith on insurance companies to persons who are not parties to the underlying insurance agreement and therefore does not recognize a bad faith tort action against an insurer by third parties.

In his response, Mr. Applegate assured the court that his bad faith claim was unrelated to any third-party claim based on the Underwood policies. Mr. Applegate stated:

> Throughout the course of this lawsuit, counsel for Plaintiff has repeatedly advised counsel for State Farm that no claim is being made for recovery under a third-party bad faith theory. Although well written and thoroughly researched, State Farm's argument concerning third-party bad faith has no application to this lawsuit as no claim for third-party bad faith has been made here.
>
> Plaintiff's bad faith claim relates to State Farm's handling of his *first*-party UM claim.

Aplt. App. Vol. I, doc. 5 at 7. The district court specifically relied on these statements and, consequently, limited its discussion of the bad faith cause of action to Mr. Applegate's arguments concerning his UM claims. The court ultimately rejected those arguments, and Mr. Applegate has abandoned them in this appeal.

Mr. Applegate now contends that the district court ignored two additional arguments concerning the issue of State Farm's bad faith: (1) "State Farm assumed a duty of good faith to *third* parties and breached that duty"; and (2) "State Farm adopted a hairsplitting, hyper-technical interpretation of the duty of good faith toward an insured pursuing both first and third-party claims." Aplt. Br. at 14. In each of these arguments, however, Mr. Applegate attempted to raise issues concerning State Farm's mishandling of the Underwood policies, thus

directly contradicting his specific assurances to the district court that his bad faith cause of action concerned only the UM claims. Mr. Applegate should not be surprised that the district court did not consider them. Moreover, we have carefully reviewed the substance of these arguments in light of the entire record in this appeal, and we conclude that they are without merit. Accordingly, the district court properly granted summary judgment for State Farm on Mr. Applegate's claim of bad faith.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge