2004 OK 53

**James E. MAGNUSSON,
Plaintiff/Appellant,**

v.

**NEW YORK TIMES CO. d/b/a KFOR,
and Brad Edwards, Defendants/Appellees.**

No. 97,703.

Supreme Court of Oklahoma.

June 29, 2004.

Rehearing Denied Sept. 20, 2004.

As Corrected Sept. 24, 2004.

Holly Hefton, Oklahoma City, OK, for Plaintiff/Appellant.

Robert D. Nelon, Jon Epstein, Oklahoma City, OK, for Defendants/Appellees.

KAUGER, J.:

¶1 We granted certiorari to consider two issues: 1) whether two broadcasts aired by the defendants/appellees, New York Times Co. d/b/a KFOR (KFOR) and Brad Edwards (Edwards) (collectively, media) come within the common law fair comment privilege, affording individuals the opportunity for honest expressions of opinion on matters of legitimate public interest based on true or privileged statements of fact; and 2) whether the media may utilize the privilege as a defense to a defamation cause filed by a private person.[1] We determine that the broadcasts,

---

1. Magnusson also argues that, if an opinion-based defense is applicable, the cause must be remanded to the trial court to determine whether the two reports were expressions of opinion. The argument is unconvincing. It is a question of law for the court to determine whether a published statement is within the protected class of speech. *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, ¶29, 958 P.2d 128. Our determination that the broadcast is protected speech negates the necessity of addressing: 1) whether the expert affidavit submitted by Magnusson regarding the issue of negligence was sufficient to raise a question of fact. See, *Malson v. Palmer Broadcasting Group*, 1997 OK 42, ¶10, 936 P.2d

both of which were focused on alleged complications arising from plastic surgery and the conditions associated therewith, meet the requirements for the application of the privilege and that the media is entitled to raise the defense of fair comment in a cause filed by a private individual.

¶ 2 Our holding that the broadcasts are entitled to protection under the common law reflects the majority position and results from: an application of the standards of the privilege; a consideration of the statements' phrasing, content and the medium through which it was presented; the circumstances surrounding its publication and a determination that the broadcasts do not imply the existence of undisclosed facts. The position that the media defendants may utilize the common law privilege is supported by Oklahoma jurisprudence as expressed in: *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, ¶ 16, 958 P.2d 128; *Mitchell v. Griffin Television, L.L.C.*, 2002 OK CIV APP 115, ¶ 17, 60 P.3d 1058, *cert. denied*, 538 U.S. 1013, 123 S.Ct. 1931, 155 L.Ed.2d 850 (2003); *Sturgeon v. Retherford Pub., Inc.*, 1999 OK CIV APP 78, ¶ 18, 987 P.2d 1218; and *Martin v. Griffin Television, Inc.*, 1976 OK 13, ¶ 23, 549 P.2d 85. Furthermore, it coincides with the majority position.

## FACTS

¶ 3 In May of 2000, KFOR and Edwards broadcast two "In Your Corner" consumer news reports concerning Magnusson. Before airing the original story on May 18, 2000, Edwards attempted to interview Magnusson, but was told that the doctor was in surgery and unavailable. Along with a copy of his curriculum vitae, a summary presented to patients and several certificates showing board certification, Magnusson faxed Edwards a document in which he stated that the dissatisfied patients failed to follow his advice and were informed by two lawyers that their claims were without merit. Additionally, he indicated that one patient's allegations were associated with the doctor's attempt to collect a judgment against her.

¶ 4 The initial story had footage of a woman displaying a hip-to-hip scar resulting from an alleged "botched" tummy tuck and two other women complaining about complications associated with breast implants. The report also contained footage of Edwards in Magnusson's office speaking to an office manager who commented that there were facts the women weren't revealing. She did not elaborate on what those facts might be. Edwards stated that although he did not speak with the doctor, Magnusson sent him a statement in which he placed the blame for complications on the patients. Edwards also indicated that he had uncovered a form in which the doctor had applied for a license renewal declaring that he had no lawsuits pending against him. In checking court records, Edwards discovered lawsuits filed as early as 1996. At the end of the broadcast, another reporter stated that seven women had complained to KFOR about dealing with the doctor and urged any other dissatisfied patients to contact the licensing board.

¶ 5 Approximately a week later, on May 24, 2000, the second story aired. Although Magnusson alleges that he was not contacted after the first broadcast, the reporter introducing the story indicated that Magnusson continued to refuse to go on air and blamed the complaints on his patients who were informed there could be complications of surgery, but that the dissatisfied patients denied the doctor's allegations. Again, Edwards interviewed two patients on air who were unhappy with the doctor's treatment—each complaining of their results and unsafe or unsanitary conditions. In addition, both patients said that Magnusson had represented himself as a board certified plastic surgeon but that he did not become certified until sometime after their procedures were performed. Nevertheless, the story also included an interview with a patient who praised

---

940; and 2) whether the trial court handled the issue concerning the waiver of the patient-client privilege as it related to the cancellation of the appointments appropriately. See *Hough v. Leonard*, 1993 OK 112, ¶¶ 14–16, 867 P.2d 438. This cause is factually different from *Weaver v. Pryor Jeffersonian*, 1977 OK 163, ¶ 39, 569 P.2d 967, in which we held that the reprint of a libelous letter to the editor could subject the media to defamation damages. Here, the broadcasts are protected by the common law fair comment privilege. Furthermore, the plaintiff in *Weaver*, this note supra, unlike Magnusson here, was never contacted for rebuttal of the charges encompassed in the letter at issue.

Magnusson and his staff saying: "I couldn't have asked for anyone to treat me any better than Dr. Magnusson or his staff". The patient also stated she was "very pleased" with her results.

¶ 6 On September 19, 2000, Magnusson sued KFOR and Edwards for defamation, invasion of privacy and intentional infliction of emotional distress alleging that the broadcasts contained false statements and created untrue impressions of his professional skills. KFOR and Edwards answered on October 10, 2000, asserting that the broadcasts were privileged in whole or in part under both the Oklahoma [2] and United States Constitutions.[3] They filed a joint motion for summary judgment on February 28, 2002, alleging that the doctor could not demonstrate that the statements in the broadcasts were false or that they caused him actionable harm. They also contended that the broadcasts were constitutionally protected expressions of opinion. On April 9, 2002, the trial court sustained the motion for summary judgment. The Court of Civil Appeals affirmed in part, reversed in part and remanded on June 24, 2003, determining that although Magnusson was not entitled to relief on his claims for false light invasion of privacy or intentional infliction of emotional distress, a question of fact existed on the defamation claim. Further, it held that the defenses of opinion or fair comment did not apply in causes brought by private individuals. We granted certiorari on March 9, 2004.

**2.** The Okla. Const. art. 2, § 22 provides:

"Every person may freely speak, write, or publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions for libel, the truth of the matter alleged to be libelous may be given in evidence to the jury, and if it shall appear to the jury that the matter charged as libelous be true, and was written or published with good motives and for justifiable ends, the party shall be acquitted."

**3.** The United States Const. amend. 1 provides in pertinent part:

"Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

**4.** The Okla. Const. art. 2, § 22, see note 2, supra.

## I.

¶ 7 **CONSIDERING THE MAJORITY POSITION AND APPLYING THE STANDARDS OF THE COMMON LAW FAIR COMMENT PRIVILEGE AND EXAMINING THE STATEMENTS' PHRASING, THEIR CONTENT, THE MEDIUM THROUGH WHICH THEY WERE PRESENTED, AND A DETERMINATION THAT THERE IS NO IMPLICATION OF UNDISCLOSED FACTS, THE BROADCASTS MEET THE REQUIREMENTS FOR APPLICATION OF THE PRIVILEGE.**

¶ 8 KFOR and Edwards contend that the broadcasts were nothing more than opinionative expressions entitled to full constitutional protection under both the Oklahoma [4] and United States Constitutions.[5] Magnusson argues a defense based on fair comment or expressed opinion is unavailable. We disagree.

### a. The fair comment common law defense.

▬▬▬ ¶ 9 Fair comment is a common law defense to a defamation action.[6] The principle affords legal immunity for comment by any and all members of the public [7] and extends to virtually all matters of legitimate public interest.[8] Its purpose is to promote the free and open exchange of ideas.[9]

**5.** The United States Const. amend. 1, see note 3, supra.

**6.** *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 2702–03, 111 L.Ed.2d 1 (1990); *Gaylord Entertainment Co. v. Thompson*, see note 1 at ¶ 28, supra.

**7.** *Cole Fischer Rogow, Inc. v. Carl Ally, Inc.*, 29 A.D.2d 423, 288 N.Y.S.2d 556, 563 (1968), *aff'd*, 25 N.Y.2d 943, 305 N.Y.S.2d 154, 252 N.E.2d 633 (1969).

**8.** *Container Manufacturing, Inc. v. CIBA–GEIGY Corp.*, 870 F.Supp. 1225, 1233 (D.N.J.1994); *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125, 516 A.2d 220, 227 (1986).

**9.** *Bichler v. Union Bank & Trust Co. of Grand Rapids*, see note 35, infra.

■ ¶ 10 The common law fair comment privilege extends to fair expressions on matters of public interest.[10] It differs from both: 1) the common law fair report privilege— which affords a qualified or conditional privilege to the media when they republish defamatory material in an account of a public or official proceeding, *i.e.* judicial proceedings, legislative sessions, judicial hearings, or official news conferences; and 2) its statutory counterpart, 12 O.S.2001 § 1443.1[11]— which embodies a similar statutory privilege as a complete defense to libel. Although all three concepts overlap, the scope of the common law fair comment privilege, encompassing expressions of opinion on all matters of public opinion, is broader than either the common law fair report doctrine or the terms of the statute[12]—both of which have their roots in political speech concepts and encompass public interest reports of official actions or proceedings.[13]

### b. Applicability of the defense to the facts presented.

■ ¶ 11 Under the common law defense of fair comment, a statement is generally privileged when it: 1) deals with a matter of public concern; 2) is based on true or privileged facts; and 3) represents the actual opinion of the speaker, but is not made for the sole purpose of causing harm.[14] In making the privilege determination, courts look to the phrasing of the statement, the context in which it appears, the medium through which it is disseminated, the circumstances surrounding its publication, and a consideration of whether the statement implies the existence of undisclosed facts.[15]

¶ 12 First, there is no question that the opinions expressed in the broadcasts involved a matter of public concern. Public health is clearly a matter of public consonance.[16] Furthermore, the availability and skills of surgeons constitute matters relating to a community's public health.[17]

■ ¶ 13 Second, Magnusson does not allege that the stories were false in the sense that they did not accurately report the patients' complaints.[18] Statements about an in-

10. *Phillips v. Evening Star Newspaper Co.*, 424 A.2d 78, 87 (D.C.1980), *cert. denied*, 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981).

11. Title 12 O.S.2001 § 1443.1 provides:
"A. A privileged publication or communication is one made:
First. In any legislative or judicial proceeding or any other proceeding authorized by law;
Second. In the proper discharge of an official duty;
Third. By a fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto, and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done, or the officer, falsely imputes crime to the officer so criticized.
B. No publication which under this section would be privileged shall be punishable as libel."

12. *Gaylord Entertainment Co. v. Thompson*, see note 1 at ¶ 28, supra.; *Wright v. Grove Sun Newspaper Co., Inc.*, 1994 OK 37, ¶ 9, 873 P.2d 983.

13. *Gaylord Entertainment Co. v. Thompson*, see note 1 at ¶ 29, supra.

14. *Milkovich v. Lorain Journal Co.*, see note 6, supra; *Gaylord Entertainment Co. v. Thompson*,

see note 1 at ¶ 28, supra; *Sturgeon v. Retherford Pub., Inc.*, 1999 OK CIV APP 78, ¶ 18, 987 P.2d 1218.

15. *Milkovich v. Lorain Journal Co.*, see note 6 at 2705, supra; *NBC Subsidiary, Inc. v. Living Will Center*, 879 P.2d 6, 11 (Colo.1994), *cert. denied*, 514 U.S. 1015, 115 S.Ct. 1355, 131 L.Ed.2d 214 (1995).

16. *In re Robins*, 169 Vt. 377, 737 A.2d 370, 373 (1999).

17. See, *Weber v. Tillman*, 259 Kan. 457, 913 P.2d 84, 95 (1996); *Damsey v. Mankowitz*, 339 So.2d 282–83 (Fla.App.1976), *cert. denied*, 345 So.2d 421 (Fla.1977). See also, *Global Laser Vision Medical Centers, Inc. v. KSWB, Inc.*, 2003 WL 1194115, ¶ 9 (Cal.App.2003—unpublished) [Statements about laser eye surgery made by commentators and news reporter during television broadcast about laser eye surgeries were not merely commercial speech, which would have been entitled to less protection under First Amendment, even though eye surgeon who brought defamation-based complaint argued that statements constituted unlawful attack on competition designed to injure his business and professional reputation; statements did not propose commercial transaction but instead pertained to issue material to public health and safety.].

18. See, *Reesman v. Highfill*, note 35, infra.

dividual which cannot be proven "true" or "false", because they are opinions [19] or conclusions based on a review of the individual's actions are privileged.[20] Furthermore, statements of pure opinion—based on stated facts or on facts known by the parties or assumed by them to exist—as a matter of constitutional law, enjoy absolute immunity protected both by the First Amendment and by art. 2, § 22 of the Oklahoma Constitution.[21] Here, all the patients interviewed by Edwards and included in the KFOR broadcasts were clearly basing their statements about the doctor's professionalism—both those patients who were upset with their results and the one patient who was very pleased with hers [22]—on their individual experiences and the opinions or conclusions they developed therefrom.

▬▬▬ ¶ 14 Third, it is for the court to determine whether a statement is one of fact or opinion.[23] The statements here cannot reasonably be interpreted as stating actual facts about the doctor.[24] Rather, they are in the nature of nonactionable "judgmental statements", opinionative but not factual in nature.[25] Furthermore, where the tone of the broadcast is pointed, exaggerated and heavily laden with emotional rhetoric and moral outrage, listeners are put on notice to expect speculation and personal judgment.[26] References to "botched" surgeries and "devastating" scars clearly fall within this category rather than being statements which could reasonably be interpreted as stating actual facts.

¶ 15 Finally, the overwhelming majority of jurisdictions—including the Tenth Circuit applying Oklahoma law [27]—faced with the issue

**19.** A statement of opinion having no provably false factual connotation is entitled to full constitutional protection. *Milkovich v. Lorain Journal Co.*, see note 6, supra; *White v. Fraternal Order of Police*, 909 F.2d 512, 528 (D.C.Cir.1990). Whether a statement is one of fact or of opinion is a question of law for the Court. *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 2780–81, 41 L.Ed.2d 745 (1974); *Metcalf v. KFOR–TV, Inc.*, see note 20, infra; *Miskovsky v. Tulsa Tribune Co.*, 1983 OK 73, ¶ 19, 678 P.2d 242, *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984); *Miskovsky v. Oklahoma Pub. Co.*, 1982 OK 8, ¶ 32, 654 P.2d 587, *cert. denied*, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982), *reh'g denied*, 459 U.S. 1059, 103 S.Ct. 479, 74 L.Ed.2d 625 (1982). See also, *Ollman v. Evans*, 750 F.2d 970, 978 (D.C.Cir.1984), *cert. denied*, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).

**20.** *Milkovich v. Lorain Journal Co.*, see note 6 at 2706, supra; *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S.Ct. 1558, 1563–64, 89 L.Ed.2d 783 (1986), *appeal dismissed, appeal denied*, 475 U.S. 1134, 106 S.Ct. 1784, 90 L.Ed.2d 330 (1986); *Metcalf v. KFOR–TV, Inc.*, 828 F.Supp. 1515, 1528 (W.D.Okla.1992); *Herbert v. Oklahoma Christian Coalition*, 1999 OK 90, ¶ 14, 992 P.2d 322.

**21.** *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974); *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 104 N.J. 125, 516 A.2d 220, 231 (1986). The Okla. Const. art. 2, § 22, see note 2, supra; The United States Const. amend. 1, see note 3, supra.

**22.** Generally, when opposing opinions are presented in a communication, the personal and nonfactual nature of the relative statements is underscored. *Phantom Touring, Inc. v. Affiliated*

*Pubs.*, 953 F.2d 724, 730 (1st Cir.1992), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 567; *Ollman v. Evans*, see note 19 at 321, supra.

**23.** *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1431 (8thCir.1989), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990), *reh'g denied*, 494 U.S. 1013, 110 S.Ct. 1312, 108 L.Ed.2d 488 (1990); *Maynard v. Daily Gazette Co.*, 191 W.Va. 601, 447 S.E.2d 293, 296 (1994).

**24.** *Milkovich v. Lorain Journal Co.*, see note 6, supra; *Herbert v. Oklahoma Christian Coalition*, note 20 at ¶ 14, supra.

**25.** *Herbert v. Oklahoma Christian Coalition*, note 20 at ¶ 15, supra; *Price v. Walters*, 1996 OK 63, ¶ 30, 918 P.2d 1370. See, *Reilly v. Associated Press*, 59 Mass.App.Ct. 764, 797 N.E.2d 1204, 1211 (2003), *review denied*, 441 Mass. 1103, 803 N.E.2d 333 (2004) [Pet owner's statements about veterinarian saying he used "an old vets' excuse" of an "emergency horse call" as a reason for not treating his dog on a Sunday morning and his alleging the veterinarian was "sloppy", "lazy" and "caused his dog's death" were protected opinion and would be recognized by the public as generalizations uttered by a distraught pet owner.].

**26.** *Milkovich v. Lorain Journal Co.*, see note 6, supra; *Herbert v. Oklahoma Christian Coalition*, see note 20 at ¶ 15, supra [Legislator referred to as supporting: decriminalization of sodomy and bestiality; taxpayer funding of abortion clinics; and minors' access to pornography in libraries.]; *Price v. Walters*, see note 25, supra.

**27.** *Metcalf v. KFOR–TV, Inc.*, see note 20, supra [Broadcast involving commentary on physician

of whether to protect similar broadcasts have determined such exaggerated criticisms to be the type of statements that our society, interested in free and heated debate about matters of social concern, has chosen to protect.[28] Finally, the reports were presented as part of the "In Your Corner" series—clearly identified as investigations into claims by patients in which both negative and positive disclosures were made about Magnusson and to which the doctor was given the opportunity to respond.[29] There was nothing about the broadcasts indicating that facts were being withheld. Rather, the majority content of the broadcasts were interviews of the patients and quotations of their expressed opinions about the treatment they received.

■ ¶ 16 Whether allegedly defamatory language is constitutionally privileged is a question of law subject to *de novo* review to ensure that there is no forbidden intrusion on the field of free expression.[30] Applying the standards of the common law fair comment privilege and considering the statements' phrasing, their context, the medium through which they were presented, the circumstances surrounding their publication, and a determination of whether the statements imply the existence of undisclosed facts, we have little difficulty determining that the broadcasts here, both of which were focused on alleged complications arising from plastic surgery and the conditions associated therewith, meet the requirements for application of the common law fair comment privilege.

## II.

¶ 17 CONSISTENT WITH THE TEACHINGS OF *GAYLORD ENTERTAINMENT CO. v. THOMPSON, MITCHELL v. GRIFFIN TELEVISION, L.L.C., STURGEON v. RETHERFORD PUB., INC.* AND *MARTIN v. GRIFFIN TELEVISION, INC.* AND THE MAJORITY POSITION, OKLAHOMA LAW ALLOWS THE UTILIZATION OF THE COMMON LAW DEFENSE OF FAIR COMMENT IN A DEFAMATION CAUSE FILED BY A PRIVATE INDIVIDUAL.

■ ¶ 18 Having determined that the common law privilege of fair comment is

engaging in plastic surgery entitled "Beauty and the Buck" questioning whether a physician was qualified, indicating some said such procedures were "unsuitable", in which patients indicated doctor treated them as "guinea pig" and where patient made statements about own condition was protected as encompassing opinion.].

**28.** Similar consumer reports have been determined to be constitutionally protected expressions. See, *Green v. CBS, Inc.*, 286 F.3d 281, 283 (5th Cir.2002), *cert. denied*, 537 U.S. 887, 123 S.Ct. 132, 154 L.Ed.2d 148 (2002) [Unattractive statements about lottery winner protected expression of opinion.]; *Campbell v. Citizens for an Honest Government*, 255 F.3d 560, 575–76 (8th Cir.2001), *reh'ng & reh'ng en banc denied* (2001) [Broadcast implicating two police officers with death of teenage boys protected opinion.]; *NBC Subsidiary, Inc. v. Living Will Center*, see note 15, supra. [News broadcasts concerning company offering living will kits indicating the kits were not worth the charges were constitutionally privileged statements of opinion.]; *Ollman v. Evans*, see note 19, supra [Op-ed column calling plaintiff "an outspoken proponent of political Marxism" clearly opinion.]; *Ogden Bus Lines v. KSL, Inc.*, 551 P.2d 222, 226 (Utah 1976) [Broadcasters statement that busing company was "lax" in hiring bus driver was statement of opinion.]; *KTRK Television v. Felder*, 950 S.W.2d 100, 106 (Tex.Ct.App.1997) [Statements that school was "in midst of controversy" and there were "things going on there" not defamatory.]; *St. Margaret Mercy Healthcare Ctrs., Inc. v. Ho*, 663 N.E.2d 1220, 1223 (Ct.App.Ind.1996) [Preliminary injunction issued to preclude distribution of media materials doctors alleged to be defamatory violated First Amendment privilege of free speech.]; *Kessler v. Zekman*, 250 Ill.App.3d 172, 189 Ill. Dec. 932, 620 N.E.2d 1249, 1261 (1993) [Podiatrist could not maintain defamation action against fellow physicians participating in news report concerning claim against podiatrist on medical malpractice.]. See also, *Hussain v. Palmer Communications Inc.*, 60 Fed.Appx. 747, 751 (10th Cir.2003—unpublished) [No defamation involved in linking individual to Oklahoma City bombing.]; *Price v. Walters*, see note 25, supra [Statements indicating that former gubernatorial candidate "gouged customers" and "had skeletons in the closet" were nonactional rhetorical hyperbole.]. But see, *Entravision Comm. Corp. v. Belalcazar*, 99 S.W.3d 393, 400 (Ct.App.Tx.2003) [Fair report privilege would not apply and doctor produced more than scintilla of evidence to support negligence element of defamation claim concerning news broadcast.].

**29.** See note 22, supra and the cases cited therein.

**30.** *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 1958–59, 80 L.Ed.2d 502 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3561, 82 L.Ed.2d 863 (1984);

applicable to the broadcasts, we must now consider whether the defense may be utilized when the plaintiff is a private individual rather than a public person. KFOR and Edwards assert that the defense is available while Magnusson opposes its applicability.

¶ 19 There is no precedential pronouncement[31] on the precise issue of whether the news media in Oklahoma may raise the fair comment or opinion defense in a suit maintained by a private individual. Nevertheless, in *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, ¶ 16, 958 P.2d 128, a case involving the initiative process and political speech in which two lawyers brought actions against a newspaper for defamation relating to articles and editorials discussing an interest group's efforts to change state tort law, the Court held that the publications were protected both by the statutory fair report and the fair comment privilege. In reaching this result, the Court reasoned:

> "... *The State can neither impede the exchange of ideas nor make that exchange costly through litigious action.* Even the *mere threat* of unfounded liability would have a 'chilling effect' on the discussion of public issues. **No less of a limitation is imposed when, as in this case, the action is taken by a private plaintiff under the aegis of state civil law. Civil actions by private parties will violate the free speech guarantee when the discussion alleged to be defamatory concerns public issues and no unlawful activity oc-**

curs...." [Italics in original. Bolded material added as emphasis.]

Furthermore, two opinions promulgated by the Court of Civil Appeals assume the media may utilize the defense.

¶ 20 In *Mitchell v. Griffin Television, L.L.C.*, 2002 OK CIV APP 115, ¶ 17, 60 P.3d 1058, *cert. denied*, 538 U.S. 1013, 123 S.Ct. 1931, 155 L.Ed.2d 850 (2003), the appellate court refused to allow the media defendants to utilize opinion as a bar to a defamation action. It did so on the basis that the facts at issue—whether horses had been doped and the plaintiff's relationship to the administration of the drug—could be proven true or false. Therefore, it affirmed the jury verdict in favor of the defamed veterinarian. Nevertheless, the opinion appears to recognize the defense relying on the United States Supreme Court's opinion in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1 (1990). *Milkovich* provides "where such a statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault as required by *Gertz*".[32]

¶ 21 Considering this Court's opinion in *Gaylord Entertainment Co. v. Thompson*, supra, the Court of Civil Appeals assumed in *Sturgeon v. Retherford Pub., Inc.*, 1999 OK CIV APP 78, ¶ 18, 987 P.2d 1218, that the defense of fair comment would apply in a defamation suit brought by a private individual.[33] The appellate court refused to affirm

*NBC Subsidiary, Inc. v. Living Will Center,* see note 15, supra.

**31.** Opinions released for publication by order of the Court of Civil Appeals, are persuasive only, and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1.

**32.** *Milkovich v. Lorain Journal Co.,* see note 6, supra, provides in pertinent part:

> "... Thus, where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth. Similarly, where such a statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault as required by *Gertz....*" [Footnotes omitted.]

Rather than recognize a constitutional distinction between "fact" and "opinion", the Supreme Court recognized a constitutional distinction between "fact" and "non-fact". The Court changed the terminology in *Milkovich*, this note, supra, but not the underlying substance. R. Smolla, *Law of Defamation* § 6.02(1) (1994).

**33.** *Sturgeon v. Retherford Pub., Inc.* see note 14 at footnote 4, supra, providing:

> "In addition to the statutory privilege found at § 1443.1, Oklahoma also recognizes the common-law 'fair comment' defense to a defamation action. This defense may apply when the comment: (a) deals with a matter of public concern; (b) is based on true or privileged facts; and (c) represents the actual opinion of the speaker, but is not made for the sole purpose of causing harm. *See Gaylord Entertainment Co. v. Thompson,* 1998 OK 30, 958 P.2d 128. For the same reasons as discussed in the text concerning the statutory privilege, however, this defense is insufficient to warrant dis-

the trial court's decision to dismiss the cause—not on grounds that the media were not entitled to raise the fair comment defense—but because the trial court did not consider all the statements alleged by the plaintiff to be defamatory.

¶ 22 In *Martin v. Griffin Television, Inc.*, 1976 OK 13, ¶ 23, 549 P.2d 85, we refused to adopt the *New York Times [v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ] standard of actual malice [34] in an action brought by a private individual against the news media. Instead, this Court determined that a reasonable balance between the right of the news media and the right of a private individual as against libel or slander was best achieved by a negligence test. In reaching this result, we did not base our decision on whether the matter involved an issue of fair comment on a matter of public or general interest but looked instead to the position of the injured individual. *Martin* did not expressly deprive the media of the defense of fair comment in an action brought by a private individual.

¶ 23 *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, ¶ 16, 958 P.2d 128; *Mitchell v. Griffin Television, L.L.C.*, 2002 OK CIV APP 115, ¶ 17, 60 P.3d 1058, *cert. denied*, 538 U.S. 1013, 123 S.Ct. 1931, 155

L.Ed.2d 850 (2003); *Sturgeon v. Retherford Pub., Inc.*, 1999 OK CIV APP 78, ¶ 18, 987 P.2d 1218; and *Martin v. Griffin Television, Inc.*, 1976 OK 13, ¶ 23, 549 P.2d 85 do not directly address the precise issue of whether the common law defense of fair comment will be utilized in a defamation cause of action. Nevertheless, the positions taken in those causes coincide with the majority position that the defense may be utilized in a defamation cause brought by a private individual.[35] Therefore, in a proper case, we determine that Oklahoman law supports the utilization of the common law defense of fair comment in a defamation cause filed by a private individual.

## CONCLUSION

■ ¶ 24 Freedom of the press does not impart an absolute right to publish without responsibility whatever one may choose, or an unrestricted and unbridled license affording immunity for every possible use of language.[36] Nevertheless, courts must be slow to intrude into areas of editorial judgment.[37] Whether a statement is intended as one of opinion or fact can never be ascertained with certainty to the satisfaction of a questioning public.[38] However, a statement of opinion which does not contain a provably false factual connotation, receives full constitutional protection.[39] Presented here are the

missing Plaintiffs' claim entirely at this point in the proceedings." [Emphasis in original.]

**34.** *Martin v. Griffin Television, Inc.*, 1976 OK 13, ¶ 23, 549 P.2d 85.

**35.** Applicable to private parties: *Ollman v. Evans*, see note 19, supra; *Bichler v. Union Bank & Trust Co. of Grand Rapids*, 745 F.2d 1006, 1012 (6th Cir.1984); *Schuler v. McGraw–Hill Cos., Inc.*, 989 F.Supp. 1377, 1388 (D.N.M.1997), *aff'd*, 145 F.3d 1346 (10th Cir.1998), *cert. denied*, 525 U.S. 1020, 119 S.Ct. 548, 142 L.Ed.2d 456 (1998), *r'hing denied*, 525 U.S. 1117, 119 S.Ct. 894, 142 L.Ed.2d 792 (1999); *Hutchinson v. Proxmire*, 431 F.Supp. 1311, 1330 (W.D.Wis. 1977) [Applying both District of Columbia and Michigan law.]; *Beattie v. Fleet Nat'l Bank*, 746 A.2d 717, 728 (R.I.2000); *Reesman v. Highfill*, 327 Or. 597, 965 P.2d 1030, 1035 (1998); *Havalunch, Inc. v. Mazza*, 170 W.Va. 268, 294 S.E.2d 70, 75 (1981); *Bainhauer v. Manoukian*, 215 N.J.Super. 9, 520 A.2d 1154, 1168 (1987); *Aafco Heating & Air Conditioning Co. v. Northwest Pub., Inc.*, 162 Ind.App. 671, 321 N.E.2d 580, 582 (1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976); *Alleman v. Vermilion Pub. Corp.*, 316 So.2d 837, 840 (La.Ct.App.1975); *Phillips v. Evening Star Newspaper Co.*, 424 A.2d

78, 87 (D.C.App.1980), *cert. denied*, 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981).

Inapplicable to private parties: *Yerkie v. Post–Newsweek Stations, Michigan, Inc.*, 470 F.Supp. 91, 93 (D.Md.1979); *Ryan v. Herald Ass'n, Inc.*, 152 Vt. 275, 566 A.2d 1316, 1321 (1989); *Rosner v. Field Enterprises, Inc.*, 205 Ill.App.3d 769, 151 Ill.Dec. 154, 564 N.E.2d 131, 151 (1990), *appeal denied*, 137 Ill.2d 672, 156 Ill.Dec. 569, 571 N.E.2d 156.(1991); *Gibler v. Houston Post Co.*, 310 S.W.2d 377, 385 (Tx.Civ.App.1958).

**36.** *McCormack v. Oklahoma Pub. Co.*, 1980 OK 98, ¶ 17, 613 P.2d 737.

**37.** *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1305 (8th Cir.1986), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986).

**38.** *Maynard v. Daily Gazette Co.*, see note 23, supra.

**39.** *Philadelphia Newspapers, Inc. v. Hepps*, see note 20, supra; *Milkovich v. Lorain Journal Co.*, see note 6, supra. Mixed statements of opinion—facts not stated nor assumed by the parties to exist—enjoy only a qualified immunity. *Dairy Stores, Inc. v. Sentinel Pub. Co.*, see note 8, supra.

tensions between two important societal values—the constitutional freedoms of speech and press versus the important reputational interests of private individuals.[40] Nevertheless, it is not the judiciary's duty to "correct" the opinions expressed by the patients here or to punish the media for communicating their statements. Rather, we are mindful that an opinion we endeavor to stifle may or may not be a false one—and even if we were certain the stifling itself would be problematic.[41]

¶ 25 The creators of our constitutional system were aware that privileges such as those discussed here carry with them the potential for abuse, but they assumed that risk should be borne by society as a cost of an informed citizenry. Nevertheless, one could but hope that reportorial standards of care in the profession would reflect a high degree of competence despite the broad protections afforded the profession.[42] Here, although the language utilized was clearly couched to grab the attention of the listener and indicated the possibility of malpractice, the broadcasts merely presented the opinions of several dissatisfied and one satisfied patient. Therefore, we hold that: 1) under the facts presented, in this case, and applying the standards of the common law fair comment privilege and considering the statements' phrasing, its context, the medium through which it was presented, the circumstances surrounding its publication, and a determination of whether the statement implies the existence of undisclosed facts, the broadcasts—both of which were focused on alleged complications arising from plastic surgery and the conditions associated therewith, meet the requirements for application of the common law fair report privilege; and 2) media defendants may utilize the common law privilege of fair comment, affording individuals the opportunity for honest expressions of opinion on matters of legitimate public interest based on true or privileged

statements of fact, to defend against a defamation cause filed by a private person.

¶ 26 The Oklahoma Constitution[43] affords adequate and independent grounds for us to afford full constitutional protection to the broadcasts here.[44] In our pronouncements of state constitutional law, cited federal jurisprudence is used solely for guidance where there is a lack of state court decision. Federal case law provides a logical framework for determining the scope of the protection guaranteed by the Oklahoma Constitution.[45]

**COURT OF CIVIL APPEALS OPINION VACATED. TRIAL COURT AFFIRMED.**

ALL JUSTICES CONCUR.

---

**40.** *White v. Fraternal Order of Police,* see note 19 at 528, supra.

**41.** *Beattie v. Fleet Nat'l Bank,* see note 35, supra; J. Mill, *On Liberty* 34 (Gryphon Ed.1992) (1859).

**42.** *Jurkowski v. Crawley,* 1981 OK 110, ¶ 15, 637 P.2d 56.

**43.** The Okla. Const. art. 2, § 22, see note 2, supra.

**44.** *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).

**45.** *Gaylord Entertainment Co. v. Thompson,* see note 1, supra.