SSS FENCE v. PENDLETON
2023 OK CIV APP 11
528 P.3d 304
Case Number: 119670
Decided: 07/21/2022
Mandate Issued: 04/20/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2023 OK CIV APP 11, 528 P.3d 304

 

SSS FENCE, LLC, Plaintiff/Appellant,
v.
JANA MARLOW PENDLETON and KRISTI MARLOW, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE CINDY H. TRUONG, TRIAL JUDGE

REVERSED AND REMANDED

David L. Nunn, DAVID L. NUNN, P.C., Edmond, Oklahoma, for Plaintiff/Appellant

Joshua Stockton, Laura Talbert, STOCKTON TALBERT, PLLC, Oklahoma City, Oklahoma, for Defendants/Appellees

GREGORY C. BLACKWELL, JUDGE:

¶1 Plaintiff SSS Fence, LLC, appeals the district court's grant of the defendants' motions to dismiss for failure to state a claim on which relief can be granted. The court found that the defendants' allegedly defamatory statements were pure opinion and that the fair comment privilege applied and therefore dismissed the case. The trial court erred in both respects. The statements at issue were either statements of fact or implied facts that, if false, are defamatory. We therefore reverse and remand for further proceedings.

BACKGROUND

¶2 We take the relevant facts from the petition. This case began when Jan Heidorn contracted with SSS to replace a section of fence that Ms. Heidorn shared with her neighbor, the defendant Kristi Marlow. Ms. Heidorn choose the wood for the fence from a selection SSS provided. The selected wood was described as a "factory second" and of lower quality than other available, but more expensive, wood. The option Ms. Heidorn choose was the cheapest option SSS offered. Although Ms. Marlow and Ms. Heidorn ultimately shared the cost of the fence, this was unknown to SSS at the time Ms. Heidorn contracted to have the fence built. SSS's contract was with Ms. Heidorn alone, but SSS was paid by separate checks from both Ms. Marlow and Ms. Heidorn.

¶3 Several weeks after the fence was completed, Ms. Marlow called SSS to voice her dissatisfaction with the fence's quality. Ms. Marlow allegedly uttered several profanities during the call and apparently threatened to "tell everyone" not to use SSS's fencing services.

¶4 Soon after the phone call, the following post appeared on Ms. Marlow's Facebook account.

If you ever need a good fence, don't use S.S.S. Fence, LLC. They take advantage of elderly people. They put up a fence for an elderly neighbor and myself, and used cheap wood (termite eaten, cheap wood). When I questioned them about it, they stated that's what she (the elderly neighbor) asked for. Why would anyone ask for wood eaten by termites?? [four "Face with Symbols on Mouth" emoji

¶5 This post received much attention, including responses from Ms. Heidorn and Jana Marlow Pendleton, Ms. Marlow's sister. Ms. Heidorn indicated her satisfaction with the fence, while Ms. Pendleton echoed her sister's insistence that the fence, and SSS's business ethics, were substandard.

¶6 In the subsequent online exchanges, Ms. Marlow made the following statements:

Here is the termite wood they used [picture displayed]

Here is the 'crap' Wood they used [picture displayed]

The fence was crap when I moved in, and it is crap no[w], but she [speaking of Ms. Heidorn] doesn't see it. I don't understand why she would be mad that I'm complaining about using shoddy supplies. I don't think anybody in their right mind would like this type of wood being used for a fence. It'll probably float away in the wind. I showed my other neighbors and they agree.

¶7 Ms. Pendleton, for her part, jumped head first into the dispute and made the following statements in defense of her sister. Though directed at Ms. Heidorn, the comments were visible on Facebook generally, and read:

I just have a question for you...why doesn't it bother you that this company did shoddy work? I am not a rocket scientist, but you are happy paying for rotten and termite damages wood???? If you are, then do you need anything else done to your house.... I will be happy to do it for you if you since you are not concerned with the quality.

What is so sad is that KRISTI and the rest of us are going to bat for YOU. You and KRISTI both got taken advantage of. I know that personally, if I paid for something and shoddy workmanship was done, I wouldn't be happy. You are getting angry at the wrong person (unless you are in cahoots with the company) ....

***

I beg to disagree. A respectable company doesn't put this as a quality fence post. [Picture follows]

***

you can give them a good review...that is your right. My right to show the CRAPPY ["Pile of Poo" emoji

just so you can truly see the difference....the one on the left...the shoddy work you paid for. The one on the right is from a reputable person. [Picture follows]

Other comments from Ms. Pendleton included (verbatim):

This was a post from [a third party's] personal page ...Here is my comment to her[:]

I guess I am missing something here... where does it say that her dogs broke anything? All I am seeing is that this person is unhappy with the wood that was used. According to the post you shared, the wood was cheap and eaten by termites. So again I am going to ask, where, in the post you attached, does it say anything about dogs???? Shady business and shady people involved, I will go even one further.....would you pay for a fence where termite damaged wood is being used as a new fence???? So how is she pathetic and immature?? Maybe you do appreciate shoddy and poor work. More power to you. ["Slightly Smiling Face" emoji

¶8 Ms. Pendleton also became convinced that employees of SSS had created Facebook accounts to back the company. In relation to those accounts, she said the following:

Funny how people are coming out of the woodwork and are taking up for a company who does shoddy work. Then they make stupid comments and then delete their info. Again I say. Shady business and shady practices. Bye bye Felicia.

***

And just like that.....her post is down. Fake account fake responses

***

Some random person taking. Up for the company. I am sure it is a fake account and it is someone with the company. They tried this yesterday with me when I gave a review regarding the company and then they tried to bash me. Not working.

***

what's so crazy, we are taking up for the neighbor and she is upset because we have reviewed the company on Facebook. Kinda fishy and shady.

¶9 Ms. Pendleton made further comments in relation to her own review of SSS on the company's Facebook page, to which SSS had responded offering their side of the story.

My review of the company prompted some serious anger issues. This was their reply to me. Such great customer service, oh wait.....the lady whom they took advantage was was the customer and I am pointing out a wrong that they need to make right.

Shady business, shady customer service.

Friends please share so this doesn't happen to someone else. Especially the elderly. [copies of SSS's responses to Pendleton's review appear here. See footnote 5.]

***

This is a shady company who does shady business. They were hired by my sisters elderly neighbor to fix the fence between them. I put a review on their page and a strange person sent me a response. I posted pics, but strangely enough, the termite picture was taken down, and so were the other lady's comments. Please share this as much as possible so they won't take advantage of more elderly people. [Additional pictures appear here.]

¶10 SSS sued both Ms. Marlow and Ms. Pendleton for libel, seeking both damages and injunctive relief. Ms. Marlow and Ms. Pendleton each filed separate, but substantially identical motions to dismiss SSS's claims under 12 O.S. § 2012

STANDARD OF REVIEW

¶11 The appellate standard of review for a trial court's grant of a motion to dismiss is de novo. Wells v. Oklahoma Roofing & Sheet Metal, L.L.C., 2019 OK 45457 P.3d 1020Krimbill v. Talarico, 2018 OK CIV APP 37417 P.3d 1240. Questions of law are reviewed de novo. Bray v. St. John Health System, Inc., 2008 OK 51187 P.3d 721

ANALYSIS

¶12 In order to recover for libel, a plaintiff must prove, among other things, that a defendant's statements were defamatory. Mitchell v. Griffin Television, LLC, 2002 OK CIV APP 11560 P.3d 105812 O.S. § 1441

¶13 Although statements of pure opinion are not actionable, as they are not capable of being proven true or false, a statement of opinion might imply false facts, which can make the statement of opinion actionable. Milkovich v. Lorain Journal Co., 497 U.S. 1, 19, 110 S. Ct. 2695, 2706, 111 L. Ed. 2d 1 (1990). Here both Ms. Marlow and Ms. Pendleton made numerous statements of fact, or implied facts, which a reasonable juror might find defamatory. The gist of the defendants' statements was that SSS is a crooked company, that they took advantage of an elderly person (and would do so again), that they used termite-affected wood, and that they didn't know how to build a quality fence. Whether the wood used was termite infested is clearly a statement that can be proven true or false. Whether SSS "take[s] advantage of elderly people" is also able to be tested in an adversarial process. The company might prove, for example, that they offer the exact same services to all its customers regardless of age, or even treat its elderly customers with special care. Both of these statements or implications, if false, are defamatory as they would clearly tend to lessen public confidence in the plaintiff's products and services.

¶14 The defendants also argue that the statements at issue are "opinions based on disclosed facts," and thereby protected under Oklahoma law. "If the defendant expresses a derogatory opinion without disclosing the facts on which it is based, he is subject to liability if the comment creates the reasonable inference that the opinion is justified by the existence of unexpressed defamatory facts." McCullough v. Cities Serv. Co., 1984 OK 1676 P.2d 833

¶15 The defendants omitted significant and important portions of the story in their online assertions, according to the pleadings. For example, both defendants implied that Ms. Marlow was SSS's customer. However, according to the allegations of the petition, which we must accept as true, she was not. Only Ms. Heidorn was SSS's customer. Further, it is entirely unclear whether the fence depicted in the pictures is termite-infested, whether it was of such low quality that the defendants' comments about it were justified, or whether Ms. Heidorn had received (as she herself appears to believe) exactly what she paid for. According to SSS, the pictures the defendants chose to show do not depict the entire fence, misrepresent its overall quality, confuse posts with pickets, and do not consider its value in relation to the price paid. Nor could the pictures answer such questions as whether SSS "take[s] advantage of elderly people" as a general matter. We think the law was best stated in Milkovich:

If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.' As Judge Friendly aptly stated: '[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words "I think."'

Milkovich, 497 U.S. at 18--19 (quoting Cianci v. New Times Publishing Co., 639 F.2d 54, 61 (2nd Cir. 1980)).

¶16 Although "[e]very person is free to speak, write, or publish his sentiments on all subjects," it must not be forgotten that every citizen is "responsible for the abuse of that right ...." Okla. Const. art. II, § 22. "Libel is one such abuse." McCormack v. Oklahoma Pub. Co., 1980 OK 98613 P.2d 737

¶17 REVERSED AND REMANDED.

WISEMAN, P.J., and HIXON, J. (sitting by designation), concur.

FOOTNOTES

See https://emojipedia.org/face-with-symbols-on-mouth/ (lasted visited June 15, 2022).

See https://emojipedia.org/pile-of-poo/ (lasted visited June 15, 2022).

See https://emojipedia.org/slightly-smiling-face/ (lasted visited June 15, 2022).

Your sister was not our customer. Your sister was our customer's neighbor.

If your sister was our customer, she could produce an estimate with her name on it.

The fact that our customer had a problem with her neighbor's dog chewing through her existing fence. She wanted a new fence to keep your sister's dog out of her yard.

We provided our customer (not you, nor your sister) an estimate with six (6) different options of wood species, and a very clear explanation of each.

You never saw this very clear explanation. Your sister never saw it either.

The fact is, your sister's dog has a terrible habit of destroying fences and getting into customer's yard. Your sister's dog continues to destroy the fence, and you and your sister are looking for a scapegoat.

You never saw the extremely detailed estimate, and are angry because you do not have all the facts.

We are happy to work with our customer, who has a 1-year warranty on her fence. Unfortunately, that 1-year warranty does not cover damage inflicted by your sister's dog.

You and your sister are not our customer. You and your sister do not have a 1-year warranty on the fence you did not purchase. There is absolutely no reason for you leave any feedback for us at all, as you are twice removed from the purchase.

Twitter, Facebook, and other forms of social media are marvelous platforms for the exchange of opinions, ideas, and information. They are also potent platforms for engaging in defamation and invasion of privacy. Courts should exercise caution in granting immunity from liability for defamation or invasion of privacy on Twitter, Facebook, or other forms of social media merely because the statements appear on such platforms. Courts should recognize no talismanic 'Twitter defense' or 'Facebook defense' to otherwise actionable statements. The truism that Twitter may be used to state opinions does not negate the truth that Twitter may also be used to state defamatory facts.

§ 6:70.50. Fact/opinion distinction in specific situations--Defamation on Twitter, Facebook, and other social media, 1 Law of Defamation § 6:70.50 (2d ed.).

Magnusson v. New York Times, 2004 OK 5398 P.3d 1070Id. ¶ 11. However, as SSS noted below, "at common law, even the privilege of fair comment did not extend to 'a false statement of fact, whether it was expressly stated or implied from an expression of opinion.'" Milkovic, 497 U.S. at 19 (quoting Restatement (Second) of Torts, § 566, Comment a (1977)). As held above, several of defendants' comments are either statements of fact or statements of opinion which imply statements of fact. Thus, if false, the statements are not shielded by the common law fair comment privilege.